## JESSUP v. UNITED STATES.

1.  Section 161 of the act of June 30, 1864, c. 173, entitled "An Act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes," does not require that when, pursuant to its provisions, adhesive and other stamps are furnished to the manufacturer on credit, the bond to secure the payment therefor shall be executed to the Treasurer of the United States.
2.  Even if taken without the authority of a statute, a bond payable to the United States, with a condition that the manufacturer shall pay such sums as he shall owe the United States for adhesive stamps, would be binding at common law, and an action might be maintained thereon.
3.  Under such a bond, any competent evidence to establish the manufacturer's indebtedness for stamps is admissible, whether they were from time to time furnished by the Commissioner of Internal Revenue or the Assistant Treasurer of the United States.

ERROR to the Circuit Court of the United States for the District of California.

This was an action at law brought by the United States against William H. Jessup, as principal, and Jabez Howes and others, sureties on his bond, dated Nov. 3, 1869, payable to the United States, in the sum of $10,000, and conditioned as follows: —

·  "The condition of the foregoing obligation is such, that whereas the said William Henry Jessup is a manufacturer of friction or other matches, cigar-lights, or wax-tapers; and whereas, under the provisions of the 161st section of an act entitled 'An Act to provide

internal revenue to support the government, to pay interest on the public debt, and for other purposes,' approved June 30, 1864, the Commissioner of Internal Revenue is authorized, from time to time, to furnish, supply, and deliver to any manufacturer of friction or other matches, cigar-lights, or wax-tapers, a suitable quantity of adhesive or other stamps, such as may be prescribed for use in such cases, without prepayment therefor, on a credit not exceeding sixty days, requiring in advance such security as he may judge necessary to secure payment therefor to the treasury of the United States within the time prescribed for such payment; and whereas adhesive stamps have been delivered, or hereafter may be delivered, to said William Henry Jessup by virtue of said authority: Now, therefore, if the said William Henry Jessup shall make a faithful return, whenever so required, of the moneys received by him for such adhesive stamps as have been or may hereafter be delivered to him, and of all quantities or amounts thereof undisposed of, whenever required so to do, and shall do and perform all other acts of him required to be done in the premises according to law and regulations, shall well and truly pay, or cause to be paid, to the Treasurer of the United States, for the use of the United States, all and every such sum or sums of money as the said William Henry Jessup may owe to the United States for adhesive stamps which have been or shall be delivered to him, or which have been or shall be forwarded to him, according to his request or order, within the time prescribed for payment for the same according to law, and shall and will pay, or cause to be paid, to the said Treasurer, for the use aforesaid, each and every sum of money as shall become due or payable to the United States, at the time and on the days each sum shall respectively become due or payable, then the above obligation to be void and of no effect; otherwise to be and remain in full force and virtue."

Section 161 of the act of June 30, 1864, c. 173, entitled "An Act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes," provides as follows: "That the Commissioner of Internal Revenue may, from time to time, furnish, supply, and deliver to any manufacturer of friction or other matches, cigar-lights, or wax-tapers, a suitable quantity of adhesive or other stamps, such as may be prescribed for use in such cases, without prepayment therefor, on a credit not exceeding sixty days, requiring in advance such security as he may judge necessary to secure pay-

ment therefor to the Treasurer of the United States within the time prescribed for such payment. And upon all bonds or other securities taken by said commissioner, under the provisions of this act, suits may be maintained by said Treasurer in the Circuit or District Court of the United States, in the several districts, where any persons giving said bonds or other securities reside or may be found, in any appropriate form of action."

While these provisions of the law were in force, Jessup, a manufacturer of friction-matches in San Francisco, Cal., desiring to avail himself of the privilege of obtaining internal revenue stamps on a credit of sixty days, gave to the United States the bond in suit.

The breach of the bond assigned is that he had received from the United States adhesive stamps amounting to the sum of $8,000, which he had neither accounted for nor paid.

The answer admits the execution of the bond, but denies generally the other allegations of the complaint. It avers performance, and sets up, by way of separate defence, that under the law and regulations, and the condition of the bond, all stamps, of whatsoever kind or denomination, delivered to Jessup, were to be so delivered to him upon a credit not exceeding sixty days; that after the delivery and execution of the bond, and before the pretended liability mentioned in said complaint had accrued, to wit, on the 18th of April, 1870, the United States, or some of its officers, made a new contract with Jessup, without the knowledge or consent of the defendants, the sureties on said bond, or either of them, whereby the credits for stamps supplied and delivered to him were extended indefinitely, and beyond the term of sixty days. The answer further avers that if he became indebted to the United States for stamps furnished, supplied, or delivered to him, such indebtedness accrued since the making of and under said new contract, and not otherwise.

The parties waived a jury, and submitted the cause to the court for trial. The court found all the issues of fact for the plaintiff, and rendered judgment in its favor for the sum of $7,272, with interest thereon from March 1, 1876.

To reverse that judgment this writ of error was brought.

*Mr. William W. Morrow* and *Mr. John E. Ward* for the plaintiffs in error.

*Mr. Assistant Attorney-General Maury* for the United States.

MR. JUSTICE WOODS, after stating the case, delivered the opinion of the court.

The answer of the defendants admits the execution of the bond which is the basis of the suit. The finding by the court below in favor of the United States of all the issues of fact raised by the pleadings establishes, beyond the reach of controversy, that Jessup did not perform the condition of his bond; that he did not pay for revenue stamps advanced to him; and that the United States, or some of its officers, did not, without the knowledge or consent of his sureties, make a new contract, whereby credits for stamps furnished him were extended indefinitely, and beyond the term of sixty days.

The finding of the court also shows that Jessup was indebted to the United States for stamps received by him, the payment of which was secured by his bond, in the sum for which judgment was rendered against his sureties.

The finding has eliminated from the case some of the questions discussed by the counsel for plaintiffs in error. The facts found by the Circuit Court are not open to review in this court, and we can only consider questions of law arising upon the trial, and duly presented by bill of exceptions, and errors of law apparent on the face of the pleadings. *Insurance Company* v. *Folsom*, 18 Wall. 237; *Cooper* v. *Omohundro*, 19 id. 65.

These questions we shall now consider. It appears from the bill of exceptions that the defendants moved to dismiss the action, on the ground that the bond in suit was given to the United States, and not to the Treasurer of the United States, and on the ground that the suit was not brought in his name, as provided by sect. 161 of the act of June 30, 1864, c. 173, as amended.

The first of these grounds is based on the assumption that the section referred to requires the bond to be given to the Treasurer of the United States and not to the United States, and, as the bond in suit is payable to the United States, that it

is absolutely void; the contention of the plaintiffs in error being that the United States cannot take a valid bond except when and in the terms directed by the statute. But the bond is not required to be made payable to the Treasurer. It may be payable directly to the United States, and conditioned that payment for stamps advanced shall be made to the Treasurer, and not depart from any express provision of the law.

But conceding the section to mean that the bond shall be payable to the Treasurer, still we are of opinion that a bond in which the United States is the obligee, and which is conditioned that payment for stamps advanced shall be made to the Treasurer, is a valid and binding obligation.

In *United States* v. *Tingey*, 5 Pet. 115, the question was made how far a bond voluntarily given to the United States and not prescribed by law is a valid instrument, and binding upon the parties; in other words, whether the United States have in their political capacity a right to enter into a contract or to take a bond in cases not previously provided for by some law. And the court declared: " Upon full consideration of this subject, we are of opinion that the United States have such a capacity to enter into contracts. It is in our opinion an incident to the general right of sovereignty, and the United States being a body politic may, within the sphere of the constitutional powers embodied in it, enter into contracts not prohibited by law, and appropriate to the just exercise of these powers."

To the same effect is *United States* v. *Bradley*, 10 id. 343.

In *United States* v. *Hodson*, 10 Wall. 395, it was held, in substance, that when a distiller's bond was given under sect. 53 of the act now in question, which required the bond to be conditioned for the performance of several particular acts which it specifically stated, and the agent of the government took the bond conditioned, not in the specific way directed by the statute, but for the parties' compliance with all the provisions of the act and such other acts as were then or might thereafter be in that behalf enacted, the bond was binding on the parties.

*United States* v. *Linn*, 15 Pet. 290, was an action against a receiver of public moneys and his sureties. The statute required him to give bond for the faithful discharge of his trust.

The instrument given and sued on was without seal, and, therefore, not the security required by the statute. The court, nevertheless, held it to be a valid and binding obligation.

These authorities show that the United States can, without the authority of any statute, make a valid contract, and that when the form of a contract is prescribed by the statute, a departure from its directions will not render the contract invalid. The bond is good at common law.

The Circuit Court was, therefore, right in overruling the motion of the defendants to dismiss the suit on the ground that the bond was given to the United States and not to the Treasurer of the United States.

This conclusion disposes also of the second ground upon which the motion to dismiss was based. For if the United States can, without the authority of any statute, take a valid bond payable to the United States, they can maintain a suit upon it in their own name. It would be absurd to hold a bond to be valid on which a suit in the name of the obligee could not be maintained.

The objection to the admissibility of the bond in evidence, which the bill of exceptions shows was taken, on the ground that the condition of the bond did not conform strictly to the condition prescribed by the statute, falls for the same reasons and upon the same authorities.

It further appeared from the bill of exceptions that on the trial of the case the United States, to prove the breach of the condition of the bond by Jessup, offered in evidence the account kept by the Assistant Treasurer of the United States at San Francisco, from which it appeared that, on Jan. 1, 1876, for adhesive stamps advanced by him to Jessup there was due from the latter to the United States the sum of $8,000. The court admitted the account in evidence notwithstanding the objection of defendants, and this is now assigned for error.

The first ground of objection urged to the admissibility of this evidence was that the account appeared to be for stamps supplied by the Assistant Treasurer, and the law under which the bond was given contemplated that the stamps should be furnished by the Commissioner of Internal Revenue.

But the penalty of the bond was payable directly to the

United States, and its condition was that Jessup should pay, or cause to be paid, to the Treasurer of the United States, for the use of the United States, all and every such sum or sums as he might owe the United States for adhesive stamps. This being a valid bond, any evidence which tended to show that Jessup was indebted to the United States for adhesive stamps was competent, and it was quite immaterial whether the stamps were furnished by the Assistant Treasurer or by the Commissioner of Internal Revenue.

The account was objected to on the further ground that it appeared on its face that the credits were continuously for a greater period than sixty days, and, therefore, that the account was not within the statute, and was incompetent and irrelevant to the issue in the action. The contention of the plaintiffs in error is that the operation of the bond extended to but one credit of sixty days ; that by the security for stamps advanced on credit required by sect. 161, is meant a new security for each and every advance of stamps, and that manufacturers needing stamps from time to time must give security as often as a lot of stamps is advanced, and consequently that the bond in suit was security only for the first advance of stamps, and that all subsequent advances were made entirely without security. But the language of the condition of the bond clearly excludes any such construction. The condition is that Jessup shall pay such sum or sums of money as he may owe to the United States for adhesive stamps which have been or shall be delivered to him, or which have been or shall be forwarded to him, according to his request or order, within the time prescribed for payment for the same, and shall and will pay, or cause to be paid, to the said Treasurer, for the use aforesaid, each and every such sum of money as shall become due or payable to the United States at the time and on the days such sums shall respectively become due and payable. The idea that the bond secured the payment of but one sum of money due for stamps purchased at one time on a single credit of sixty days, finds no support in the language of the bond. The payment of sums due at different times, for stamps purchased at different times, is expressly secured in the condition of the bond.

The bond in this respect conforms to the statute, which

authorizes the Commissioner of Internal Revenue from time to time to supply and deliver to any manufacturer of friction-matches a suitable quantity of adhesive or other stamps, without prepayment therefor, on a credit not exceeding sixty days. What we have said covers all the errors assigned.

We find no error in the record.

*Judgment affirmed.*