# MORSE *v.* UNITED STATES TO THE USE OF HINE.

---

EQUITY; SALE OF INFANT'S REAL ESTATE; VOID DECREES; SERVICE BY PUBLICATION; RECITALS IN DECREES; DECREES PRO CONFESSO; COURT TRUSTEE'S BONDS; AFFIDAVITS OF DEFENSE; PRINCIPAL AND SURETY; ESTOPPEL.

1. The court below, sitting as an equity court, has no inherent power to decree the sale of an infant's real estate for the purpose of investment; and prior to the date the Code (D. C.) went into effect (from and after January 1, 1902) there existed no statutory authority for the sale of an infant's vested remainder in land at the suit of the life tenant (following *American Secur. & T. Co.* v. *Muse*, 4 App. D. C. 12, and *Clark* v. *Mathewson*, 7 App. D. C. 382), or for the sale of a contingent interest in land limited over by will or deed to persons, infants or adults, not being the issue of the tenant for life.

2. When constructive service of process by publication is substituted for personal service, the statutory provisions must be strictly pursued. (Following *Leach* v. *Burr*, 17 App. D. C. 137.)

3. Where publication against nonresident defendants is required to be made once a week for three successive weeks, three weekly publications extending over a period of fifteen days are insufficient.

4. The recital in a decree *pro confesso*, that an order of publication was duly published as therein directed, being the recital of a jurisdictional fact, cannot prevail against the truth as elsewhere disclosed in the proceedings.

5. A decree rendered in advance of the period at which the court may lawfully acquire jurisdiction over the defendants is void; and where a decree *pro confesso* is taken against nonresident defendants prior to the rule day occurring forty days after an order of publication, at which time they are required to appear, a final decree making the *pro confesso* absolute, is a nullity, if made after such rule day but before the next ensuing rule day. (Citing *Sturges* v. *Hancock*, 4 App. D. C. 289.)

6. A void decree for the sale of an infant's real estate cannot be ratified and made good by a subsequent decree directing the trustee, who had been appointed to sell, to pay into court the proceeds of sale.

VOL. XXIX.—28.

7. The bond of a trustee appointed by the court in an equity cause to sell the real estate involved, which runs to the United States, can be put in suit only by some person whose legal rights have been injuriously affected by breach of its condition; and in such a suit the United States is the nominal plaintiff only.

8. Where, in an action on a court trustee's bond against the surety, the defendant annexes to his special pleas a copy of the record of the equity cause in which the trustee was appointed, and in his affidavit of defense, denying the right of the plaintiff to recover, refers to such record, and makes his defense upon the ground that the decree appointing the trustee was void for want of jurisdiction in the court appointing him, and upon the further ground that he was discharged as surety because of an arrangement entered into between one of the plaintiffs and the trustee regarding the investment of the trust funds, the sufficiency of the defense must be determined upon the pleadings, or upon the pleadings and proof, and not, as a side or collateral question, upon the affidavit, on a motion for judgment under the 73d rule. (Following *Bailey* v. *District of Columbia,* 4 App. D. C. .356.)

9. Where a decree for the sale of an infant's real estate is void for want of jurisdiction, the bond of the trustee appointed to make the sale is also void, and is without force either as a statutory or a common-law obligation; and its invalidity may be shown by the surety in a suit against him on the bond by the United States to the use of the parties to the cause. (Citing *United States* v. *Pumphrey,* 11 App. D. C. 44.)

10. The surety on the bond of a trustee appointed by the court to sell real estate, at the suit of the parties intended to be secured, is not estopped, in a suit by such parties against him on the bond, to deny the jurisdiction of the court to make the decree of sale, by a recital in the bond that the trustee was "duly appointed" to make the sale.

No. 1704.   Submitted February 20, 1907.   Decided May 7, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia for want of a sufficient affidavit of defense, in an action on a bond.

*Reversed.*

The facts are stated in the opinion.

*Mr. John Selden* for the appellants.

*Mr. W. H. Robeson, Mr. Charles A. Keigwin,* and *Mr. Wm. Hepburn Russell,* for the appellees:

1. No arrangement entered into between Mrs. Hine and Waggaman would release the trustee or his surety of responsibility to account for the funds coming into his hands under the decree of the court. *Forrester* v. *State,* 46 Md. 154, 162–164; *Re Williams,* 1 Md. Ch. 25; *Hendrick* v. *Lindsay,* 93 U. S. 143, 146–150; *Adair* v. *Bremer,* 74 N. Y. 539; *Cavender* v. *Cavender,* 8 Fed. 641; *Brooks* v. *Brooke,* 38 Am. Dec. 310.

2. Inasmuch as the present suit is being prosecuted by the United States of America, the obligee of the bond, against the obligor, Waggaman and the surety thereon, Clarke, to recover funds received by the obligor, Waggaman, under the decree of the equity court passed in 1899, it is quite clear that Waggaman is estopped and his surety Clarke is estopped from denying the jurisdiction of the court to enter the decree, no matter whether such decree is valid or invalid. *Stephens* v. *Crawford,* 1 Ga. 574, 44 Am. Dec. 680, 686; *Kincannon* v. *Carroll,* 30 Am. Dec. 391; *Daniels* v. *Tearney,* 102 U. S. 415; *Ploughman* v. *Henderson,* 59 Ala. 559; *Moore* v. *Earle,* 91 Cal. 632; *Parker* v. *Campbell,* 21 Tex. 763; *Cutler* v. *Dickinson,* 8 Pick. 386; *Williamson & McAthur* v. *Woolfe,* 37 Ala. 298; *Norris* v. *State,* 22 Ark. 524; *Burnett* v. *Henderson,* 21 Tex. 588; *Coons* v. *People,* 76 Ill. 383; *Bell* v. *People,* 94 Ill. 230; *Allen* v. *Magruder,* 3 Cranch, C. C. 6; *Mix* v. *People,* 86 Ill. 329; High, Receivers, 3d ed. § 124; *Twin City Power Co.* v. *Barrett,* 126 Fed. 302, 309.

3. The decree of sale cannot be collaterally questioned. *McCormick* v. *Sullivant,* 10 Wheat. 192; *Skillem* v. *May,* 6 Cranch, 267; *Clary* v. *Hoagland,* 6 Cal. 685; *Tallman* v. *McCarty,* 11 Wis. 401; *Dugan* v. *Baltimore,* 70 Md. 1; *Ex parte Watkins,* 3 Pet. 191, 203, 209; *Ex parte Parks,* 93 U. S. 20; *Florentine* v. *Barton,* 2 Wall. 216; *Pulaski Co.* v. *Stuart,* 28 Gratt. 879; *Harvey* v. *Tyler,* 2 Wall. 328, 342; *Galpin* v. *Page,* 18 Wall. 350; *Thompson* v. *Tolmie,* 2 Pet. 156; *Grignon* v. *Astor,* 2

How. 318; *Vorhees* v. *Bank of United States,* 10 Pet. 447, 473, 477; *Griffith* v. *Bogert,* 18 How. 158, 164.

4. The bond is a valid common-law obligation. A bond, although not good as a statutory bond because of a want of jurisdiction in the court in the matter, may be good as a common-law obligation. *Dudley* v. *Rice,* 119 Wis. 97, 95 N. W. 936; *United States* v. *Tingey,* 5 Pet. 115; *United States* v. *Bradley,* 10 Pet. 343; *Twin City Power Co.* v. *Barrett,* 126 Fed. 302 (C. C. A.); *McVey* v. *Peddie* (Neb.) 96 N. W. 166. A trustee receiving money from the sale of trust property must account for it, regardless of the validity of the title by which the property was held. *Griffith* v. *Godey,* 113 U. S. 89. See also *State ex rel. Dair* v. *Roudebush,* 16 N. E. 636; *McVey* v. *Peddie,* 96 N. W. 167, citing *Stevenson* v. *Morgan,* 93 N. W. 180; *United States* v. *Bradley,* 10 Pet. 343, 360–365; *Justices* v. *Smith,* 2 J. J. Marsh. 418; *Johnson* v. *Laseire,* 2 Ld. Raym. 1459; *United States* v. *Mason,* 2 Bond, 183; *Crawford* v. *Howard,* 9 Ga. 314; *United States* v. *Tingen,* 5 Pet. 115; *United States* v. *Pumphrey,* 11 App. D. C. 44; *United States* v. *Linn,* 15 Pet. 290; *United States* v. *Bradley,* 10 Pet. 343; *Tyler* v. *Hand,* 7 How. 573; *Howgate* v. *United States,* 3 App. D. C. 277.

5. The supreme court of the District having exercised jurisdiction over the subject-matter of the suit in which the bond was given, its determination of its own jurisdiction is, after this lapse of time, binding upon all persons before the court in that case, including the trustee, Waggaman, and his surety, Clarke; and defendants are now precluded from questioning the jurisdiction of the court to decree the sale, appoint the trustee, and require the bond. *Florentine* v. *Barton,* 2 Wall. 210, 216; *Evers* v. *Watson,* 156 U. S. 527, 533; *State* v. *Waupacca Bank,* 20 Wis. 640. The test of jurisdiction is whether the court had power to enter upon the inquiry, not whether its conclusion was right or wrong. *Lake County* v. *Platt* (C. C. A.) 79 Fed. 567; Brown, Jurisdiction, secs. 64–66.

6. The affidavit of defense does not deny the right of the plaintiff and does not state grounds of defense, which would, if true, be sufficient to defeat the plaintiff's claim in whole or in part.

Mr. Justice McComas delivered the opinion of the Court:

This is an appeal from a judgment, under the 73d rule of the court below, rendered in an action of debt, upon the bond of a trustee for sale, appointed by decree in equity, against the surety in the bond for $18,000, the penalty to be released upon payment of $8,147.72, with interest and costs. The appellants, Alexander Porter Morse, the Union Trust Company of the District of Columbia, and Daniel Boone Clarke Waggaman, are the executors of the surety, Daniel B. Clarke, and say the court below erred in the rendition of such judgment because the contentions raised by the pleadings and affidavit of defense presented a case of complete defense, or, at least, such a case as did not entitle the plaintiff below, the United States of America to the use of Mattie McC. Hine and Robert E. Hine, to this summary judgment.

The questions raised are interesting and important, and can be better understood by referring to the facts alleged in the pleas and supporting affidavit and the proceedings out of which arose the suit against the deceased surety and the judgment appealed from.

Robert E. Hine died in 1895, seised in fee of real estate yielding rent and including lot 32 in square 164 in Washington, known as 1712 L street, N. W., improved by a dwelling, and had by his will devised all of his realty to his widow, Mattie McC. Hine, for life (charging the life estate with the cost of insurance and repairs), with vested remainder in fee to Robert Edward Hine, then four years old, their only child.

The will provided that in the event of the death of the son after the marriage of the mother, if it happened, the realty upon her decease should be sold and the proceeds of sale distributed amongst certain lineal or collateral relations of the testator, and that if the wife remarried during the life of the son, she was to retain but one half of the income of the estate, and pay over the remainder to a trustee for the use of the son.

On March 6, 1899, Mrs. Hine, in order to effect a sale of this house and lot on L street, filed a bill in equity in the court

below against her son Robert Edward, alleging that he was then nine years of age, and against thirteen other persons by the bill alleged to be the lineal or collateral relatives of the testator by his will intended; and the bill averred that all of these were nonresidents of the District of Columbia, some of them in South Africa, Australia, and England, and that four of them were infants.

The bill alleged that the complainant was still unmarried, and that under the will of her deceased husband she was tenant for life of this L street property, in which her son held a vested remainder in fee, with contingent limitations over in favor of the other defendants; that the dwelling house was deteriorating for want of repairs, and was at times without a tenant; that $8,500 could be obtained for the property, and that it would be better for the interests of all concerned for the property to be sold and the proceeds invested under sec. 973 of the Revised Statutes of the District of Columbia; and that said will in no manner prohibited, but really contemplated, such a sale. Amongst other things the bill prayed for the appointment of a guardian *ad litem* for the infant defendant; for a decree for a sale of the property by a trustee to be appointed for that purpose; for the investment of the proceeds of sale under sec. 973 just mentioned; for payment of the income of the fund to the complainant during her lifetime, and the distribution of the principal sum after her decease, in accordance with the provisions of the will, which, it was prayed, might be proven and established by decree.

The appellants contend that the court possessed no jurisdiction of the case made by the bill, and could render no valid decree under it. Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. For the operation of every judgment must depend upon the power of the court to render that judgment, or, in other words,

on its jurisdiction over the subject-matter which it has determined. And even though the court may possess jurisdiction of a cause, of the subject-matter and of the parties, it is still limited in its mode of procedure and in the extent and character of its judgment. And though there be jurisdiction for certain purposes in a cause, the jurisdiction may be exceeded in the judgment. Where the ultimate judgment is founded upon any order or process which the court was without authority to direct, the judgment itself is a nullity. *Elliott* v. *Peirsol,* 1 Pet. 328, 340, 7 L. ed. 164, 170; *Rose* v. *Himely,* 4 Cranch, 241, 269, 2 L. ed. 608, 617; *Windsor* v. *McVeigh,* 93 U. S. 274, 284, 23 L. ed. 914, 918; *Williamson* v. *Berry,* 8 How. 495, 542, 12 L. ed. 1170, 1190; *Lamaster* v. *Keeler,* 123 U. S. 376, 391, 31 L. ed. 238, 242, 8 Sup. Ct. Rep. 197.

The question of jurisdiction is always examinable collaterally. Whatever may be the circumstances, whenever a right is asserted under a judgment or decree, the jurisdiction of the court which has awarded it becomes the subject of inquiry. While the judgment of every court acting within the sphere of its jurisdiction is exempt from collateral attack, directly the reverse of this is true in its relation to the judgment of any court acting beyond the pale of its authority; for the jurisdiction of any court exercising authority over a subject may be inquired into in every other court, when the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceeding. What another court may do the court which entered the judgment or passed the decree may do. *Reynolds* v. *Stockton,* 140 U. S. 254, 264, 35 L. ed. 464, 467, 11 Sup. Ct. Rep. 773; *Wilcox* v. *Jackson,* 13 Pet. 498, 511, 10 L. ed. 264, 270; *Elliott* v. *Peirsol,* 1 Pet. 341, 7 L. ed. 170; *Thompson* v. *Whitman,* 18 Wall. 457, 468, 21 L. ed. 897, 901.

The equity court has no inherent power to decree the sale of an infant's real estate for the purpose of investment, and its jurisdiction to decree the sale of an infant's realty is wholly statutory. Prior to the Code there was no statute in this District whereby a court of equity could decree a sale of a vested remainder in fee in lands belonging to an infant, at the suit of the

tenant for life. At the time this bill was filed it appears there were but four classes of cases of statutory grant of authority in equity to order the conversion of realty into personalty; and the bill we are now considering does not make a case within either of these four classes. *Thaw* v. *Ritchie,* 5 Mackey, 200–202; *Stansbury* v. *Inglehart,* 9 Mackey, 147; *American Secur. & T. Co.* v. *Muse,* 4 App. D. C. 20; *Clark* v. *Mathewson,* 7 App. D. C. 384. These cases show that prior to the adoption of the Code there existed no statutory authority in this District for the sale of a vested remainder in fee in lands belonging to an infant, at the suit of the tenant for life, and it appeared on the face of this bill that the estate of the infant Robert Edward Hine was a vested remainder in fee. This bill made the thirteen lineal or collateral relations of the testator before referred to codefendants with the infant remainderman Robert Edward Hine, and four of these were infants. But at that time there was no statutory authority in this District to decree a sale, at the suit of a sole tenant for life, of the contingent interest in land limited over by will or deed to persons, infants, or adults, not being *issue* of such tenant for life. Appellee's counsel claim that this bill was founded on sec. 969, D. C. Rev. Stat.; but that statute empowered the court in equity to decree the sale of real property only when the estate was limited to one or more for life or lives, with contingent limitations over to such *issue* of one or more of the tenants for life as should be living at the death of either parent or parents. It appeared upon the face of the bill, and also in the testimony supporting it, that none of the thirteen codefendants mentioned as the beneficiaries of the contingent limitations contained in this testator's will were in any wise related to the complainant, except through affinity, and as being mother, brother, sister, or nephew of her deceased husband, the testator. It is manifest that these proceedings contemplated a sale of the interests in the property of all the defendants to the bill, and by the express terms of the decree for sale the title of all of them is devested from the parties to the suit and vested in the trustee for the purpose of making the sale and conveyance. The declaration in this cause below averred that the bond sued

on, given in the suit in equity, was executed "in accordance with the requirements of" the decree for sale, and in order that Waggaman "might be qualified to act and should act as trustee to make the sale."

Not only does it appear that the equity court below possessed no jurisdiction of the case made by the bill, but, if we assume that in such a case that court had jurisdiction by statute, the proceedings lack the particularity in following statutory methods for affecting title to real property, so important to observe lest a decree in such proceedings be a nullity.

The infant Robert Edward Hine was served with process, and all other defendants, not residents, were returned *non sunt*. The complainant on April 26, 1899, obtained an order of publication against the nonresidents, requiring their appearance to the suit on or before the first rule day of the court below occurring forty days after the date of the order, which was to be published "once a week for three successive weeks in the Washington Law Reporter and in the Evening Star." This order stated that it was the object of the suit "to sell sublot 32 in square 164, Washington, D. C., and reinvest proceeds." The period thus designated for the appearances of the nonresidents was that prescribed by D. C. Rev. Stat. sec. 787, and by the common-law rule of the court below then in force, which provided that "the proof of publication" should be by the affidavit of the publisher or manager of the newspaper, and that such affidavit should "state how many and at what time the order was published in the paper."

The affidavit of the manager of the Washington Law Reporter, filed June 7, 1899, and the certificate accompanying it, disclosed that the order had been published "in the regular issues of that weekly newspaper bearing date April 27th, May 4th, and 11th, 1899." The affidavit of one of the publishers of the Evening Star, filed on June 7, 1899, and the certificate therewith, disclosed that the order had been published in that paper on "April 29th and May 6th and 13th, 1899." This order, instead of being published in both journals weekly for the space of three weeks or twenty-one days, was published in neither (though

weekly) for more than fifteen days. We need only refer to *Guaranty Trust S. & D. Co.* v. *Green Cove & M. R. Co.* 139 U. S. 137, 146–148, 35 L. ed. 116, 119, 120, 11 Sup. Ct. Rep. 512, to show the insufficiency of such publications; for when constructive service of process by publication is substituted in place of personal service the statutory provision must be strictly pursued, in order to bind a citizen of another State not personally present. Every principle of justice exacts a strict and literal compliance with the statutory provisions. See also *Galpin* v. *Page,* 18 Wall. 350, 368, 369, 21 L. ed. 959, 963, 964; *Leach* v. *Burr,* 17 App. D. C. 137. It is true the decree *pro confesso* recited that the order of publication had been duly published as therein directed, but this recital, being the narration of a jurisdictional fact, cannot prevail against the truth disclosed elsewhere in these equity proceedings. *Settlemier* v. *Sullivan,* 97 U. S. 444, 448, 449, 24 L. ed. 1110–1112; *Cheely* v. *Clayton,* 110 U. S. 701, 708, 28 L. ed. 298, 300, 4 Sup. Ct. Rep. 328. Again, this order of publication of April 26, 1899, required the nonresident defendant to appear to the suit on or before the first rule day occurring forty days after the date of the order; and the first Tuesdays of the month then constituted the rule days of that court. In 1899 the first Tuesday in June fell on the 1st day of that month, and the first Tuesday in July on the 4th day of that month, a legal holiday. Only thirty-six days had expired on June 1st; wherefore the nonresident defendants were not required by this order to appear to the suit before July 5th, 1899; yet on June 7, 1899, for want of such appearance to the suit, the complainant secured a decree *pro confesso* against all of the adult nonresident defendants, and the cause proceeded *ex parte.*

A decree rendered in advance of the period at which the court may lawfully acquire jurisdiction over defendants is void. Whenever notice or citation is required, the party cited has the right to appear and be heard; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party, in such a case, of the right to appear, is in legal effect the recall of the citation period. *Sturges* v. *Hancock,* 4 App. D. C. 293;

*Windsor* v. *McVeigh,* 93 U. S. 274, 278, 23 L. ed. 914, 916; *Harris* v. *Hardeman,* 14 How. 334, 339–341, 14 L. ed. 444, 446, 447. The fact that the final decree for sale was not made until July 6, 1899, does not cure the defect, for, though for want of appearance a decree *pro confesso* might then have been taken against them, the equity rules of the court below thereupon prohibited the entry of any final decree against them prior to the rule day in August next; and the final decree for sale makes absolute the decree *pro confesso,* and as to the adult defendants rests upon the latter decree; and if the decree *pro confesso* against them was void, so must be the final decree as to them also. *Lamaster* v. *Keeler,* 123 U. S. 376, 391, 31 L. ed. 238, 242, 8 Sup. Ct. Rep. 197; *O'Hara* v. *MacConnell,* 93 U. S. 150, 153, 23 L. ed. 840, 842.

Thomas E. Waggaman was appointed guardian *ad litem* for all the infant defendants. By the terms of the final decree of July 6, 1899, Waggaman was appointed trustee for sale upon giving bond, with surety, to the United States in the penalty of $18,000; and he was authorized to sell for cash or upon time, and, upon the ratification of the sale and payment of the purchase money, to make conveyance to the purchaser, *and to bring the proceeds of sale into court, to be disposed of under the direction of the court.* The object of this suit was to effect such a sale of the property as would embrace the interests therein of all the parties to the bill. The bond given on July 7, 1899, by Waggaman, who had been "duly appointed trustee to make sale," and by his surety, Daniel B. Clarke, now deceased, was in the usual form. The latter, in his affidavit of defense, says that he had no reason to believe that the cause, the decree, or the bond were open to any exception whatever, either of law or of fact. On July 20, 1899, Waggaman, trustee, reported a sale of the premises to Mr. Hay, and this sale was finally ratified. The declaration alleges that Waggaman received the whole of the purchase money on July 19, 1899, though more likely it happened after August 2, 1899, the date of the final ratification of sale. No report or return of these proceeds was made by Waggaman to the court until May, 1905.

On February 15, 1905, Robert Edward Hine, the complainant's infant son, by next friend, filed a petition in the equity cause we have considered, calling upon Waggaman to state his account as trustee, and to bring the fund into court. On May 15, 1905, Waggaman, answering, admitted his appointment and qualification as trustee, the final ratification of the sale, that he had received $8,500 in cash for the premises, and that after the payment of expenses there had remained in his hands a net balance of $8,147.72, as shown in the account dated August 31, 1899, on which day he had transmitted a copy of the account to Mrs. Hine, and annexed another to his answer or report. He represented that Mrs. Hine, as tenant for life, being entitled to the income for life, of these net proceeds on August 31, 1899, had agreed with him that he should retain the $8,147.72 and pay her 5 per cent interest quarterly thereon, and that he had paid such interest quarterly until some time in the year 1904, and that the fund had remained in his possession, and that thereafter he became bankrupt and became unable to pay either principal or interest. The account referred to is that of Waggaman, real estate broker, in account with himself as trustee in the equity cause we are here considering. After further proceedings upon this petition, on November 21, 1905, the court below in equity signed a decree directing Waggaman within ten days to pay into court $8,147.72, with interest from August 1, 1904. His bankruptcy rendered it impossible to make such payment.

The action before us is grounded upon the conclusiveness of the decree for sale as between the parties to this action and for the recovery of the entire net proceeds of the sale for the use and benefit of the equitable plaintiffs in this action. Because Waggaman was bankrupt, the decree of November 21, 1905, was designed to affect the rights of Clarke, the surety on the bond; but since the court below in equity was without jurisdiction to render the decree for sale, the subsequent decree could not ratify the former.

The declaration in the action we are here considering was filed in an action brought on March 5, 1906, upon the bond before mentioned, against the insolvent principal, Waggaman,

and the surety, Clarke, by the United States "at the instance and to the use of" Mrs. Hine and her son. The declaration was in debt for the penalty of the bond, and the judgment was for the penalty, to be released upon payment of $8,147.72, with interest from August 1, 1904, and costs. This declaration assigns two breaches of the bond; a breach of duty by the trustee in omitting to pay the balance of the purchase money into the registry of the court agreeably to the decree of July 6, 1899, and a breach of duty by the trustee in omitting to make such payment agreeably to the decree of November 21, 1905.

This declaration contains no averment of the rights or interests of those at whose instance and to whose use the action was brought, and because the true nature of the proceedings in equity were not disclosed by the declaration the defendant below set forth the record by plea. In such a case as this, the Federal courts regard the real, and not the nominal, plaintiff. As in Maryland the State possesses no interest in the bond, so in this District the United States is a nominal plaintiff only. The bond can be put in suit only by some person whose legal rights have been injuriously affected by a breach of its condition.

This action is founded upon the conclusiveness of the decree for sale, upon the validity of the sale as between the parties to the action, and upon the title of the equitable plaintiffs to the net proceeds of the sale, and is for the sole use and benefit of the equitable plaintiffs, whose interests are not alleged to be joint, but are shown by the record to be separate. The able counsel for appellants contends that, if no recovery could be had by Robert E. Hine, the infant, the right of Mrs. Hine, the life tenant, to recover, could extend only to the present money value of her life estate in the net balance of the proceeds of sale; that, if no recovery could be had in right of Mrs. Hine, the recovery in the interest of her infant son could extend only to the present money value of his interest in the net balance of the proceeds of sale, computed under all of the provisions of the will; that a plea in bar, if sustainable as to the right of one of the equitable plaintiffs in the action, would not only render

necessary an inquiry as to the nature of the recovery admissible, in the interest of the other, but would appear to require the intervention of a jury for its solution; and therefore the 73d rule of the court below would appear inapplicable.

In order to bring before the court the true character of the bill and the proceedings thereunder, the defendant below pleaded in confession and avoidance as to each breach before mentioned, and as to the separate interest of each of the equitable plaintiffs, and after introducing in the pleas, by way of inducement, the will of the testator, which had been omitted from the record, the transcript of the record in the equity proceeding was made part of the pleas. The pleas to both breaches conceded an apparent right of action in the plaintiffs upon the matter set up in the declaration, but avoided that apparent right by the use of the transcript of the record in equity to show that the proceedings under the bill were *coram non judice,* and that the bond executed to effect a sale of the property was given for the attainment of an unlawful object; and to each of the breaches in respect of the interest of Mrs. Hine the surety in effect pleaded his discharge. These latter pleas in substance averred that on August 31, 1899, while Waggaman still retained the proceeds of sale, Mrs. Hine, claiming to be the beneficiary for life of the fund, had, without the knowledge or assent of the surety, entered into an arrangement with Waggaman by which he was to continue to retain the fund without returning or reporting the same to the court, and to pay her interest upon the fund at the rate of 5 per cent; that thereafter, in pursuance of this arrangement, Waggaman for several years, without the knowledge or assent of the surety, had retained possession of the fund without returning or reporting the same, and paid interest as agreed, and had, while so retaining the fund, expended the same for his own use, so that the fund, by reason of his bankruptcy, became irrecoverable.

We omit detailed discussion of the plaintiff's affidavit and of the affidavit of defense, because of the great length thereof, and also because, in our opinion, under the pleadings it was clear that the 73d rule of the court below was not applicable to

this case.  Suffice it to say, the affidavit of defense, with clearness and precision, denied the right of the plaintiff to recover, in whole or part, the money claimed in the declaration, made adequate reference to the transcript of record annexed to the defendants' pleas, and affirmed that over the cause embraced in such transcript the court possessed no jurisdiction; that, as to the affiant, all of the proceedings in the said cause were null and void; and that the said bond was given for the accomplishment of an illegal end and object.  The affidavit then, with clearness and precision, declared that such illegality and nullity constituted part of the ground of defense of the affiant to the present action, and further set forth the other ground of defense; namely, that if he was liable originally upon the bond he was discharged as a surety, by reason of the transactions between Mrs. Hine and the trustee, from any liability to her upon the bond sued on, because of the matters set out in the pleas, under the arrangement therein alleged to have been entered into and consummated without the knowledge or consent of the surety.  The learned counsel for appellants rightfully urges that the defense in this case is such that its sufficiency must be determined upon the pleadings, or upon the pleadings and proof, and not as a side or collateral question upon the affidavit, and that the 73d rule, under the decision of this court in the case of *Bailey* v. *District of Columbia,* 4 App. D. C. 356, was not applicable to this case.

We have decided that the decree in the equity proceedings here discussed was void, and therefore the bond here sued upon is without force as a statutory obligation, because it was not such a bond as was authorized by law to be given in that proceeding.

The court below held that, even if the equity court of this District had been altogether without jurisdiction over the real estate with which this equity suit was concerned, the bond sued upon is a valid common-law obligation.  The United States possessed no legal interest in the bond, and because it was given by a trustee under a decree for sale, which was void, it was without force as a statutory obligation, and it was such an instrument that no action could be maintained thereon in this District as

a common-law obligation, either by the United States or for the benefit of these equitable plaintiffs. The object as well as the terms of the bond negatived the intention of the surety to enter into a common-law obligation. The surety sued in this action, if bound at all, was to be bound, not for a principal charged with common-law liabilities, but for the conduct of a trustee subject to the jurisdiction and control of the court of equity administering the trust, reducing, through such judicial supervision of the trustee, liability to loss on the part of the surety. *United States use of Davis* v. *Draper,* 8 Mackey, 92; *United States* v. *Pumphrey,* 11 App. D. C. 44, 49.

As the equity court had no jurisdiction whatever in the matter under the void decree, there was no legal appointment of this trustee, and it was legally impossible for the trustee to perform the conditions of the bond according to its true spirit or meaning. The surety intended to become liable for a trustee who was under the jurisdiction of the equity court, who, in administering the trust, must conform to the rules and practice of that court. To hold the surety bound as upon a voluntary contract to be responsible for a trustee not subject to the jurisdiction of an equity court would be to change the character of the contract the surety intended to assume, and would increase his liability. The bond was not given to accomplish anything save what might have been accomplished by a bond of a trustee for sale in equity. It was not given in pursuance of any agreement between the parties, but only in compliance with a statutory requirement. It did not and could not have that effect, and was therefore wholly without consideration, and void, and could not be valid as a common-law undertaking. *Conant* v. *Newton,* 126 Mass. 109; *Powers* v. *Chabot,* 93 Cal. 269, 28 Pac. 1070. Bonds conditioned for lawful purposes may in general be enforced, though not drawn in conformity with the statute or when not required by statute; but this bond, which was not authorized by law to be given in this judicial proceeding, being void for the reasons we have stated, could not be valid and enforceable as at common law. The obligation which the United States may enforce for the equitable plaintiffs in its name must be a valid

obligation.  *United States* v. *Linn,* 15 Pet. 290, 310, 10 L. ed. 742, 749; *Tyler* v. *Hand,* 7 How. 573, 583, 12 L. ed. 824, 828; *United States* v. *Hodson,* 10 Wall. 395, 408, 19 L. ed. 937, 940; *Jessup* v. *United States,* 106 U. S. 147, 152, 27 L. ed. 85, 86, 1 Sup. Ct. Rep. 74.

Nor can we agree with the court below that the recital in the bond "that Waggaman had been duly appointed trustee to make the sale," and while so acting made the sale and received the proceeds of the sale, estopped his surety from denying the jurisdiction of the equity court to adjudge the sale to be made. When this court can see that the equity court below was without jurisdiction, it must so decide, no matter what the parties may have admitted by recital.  It is true there may be an estoppel by deed, but a void deed is no deed, and can create no estoppel. If an individual cannot be estopped by recitals in an instrument which is no deed, he should not be estopped by recitals contained in a judicial record which is no record so far as his obligation is concerned.  As the Supreme Court said in the case of *Harris* v. *Hardeman,* 14 How. 334, 340, 14 L. ed. 444, 446, quoting *Starbuck* v. *Murray,* 5 Wend. 157, 21 Am. Dec. 172: "But it is contended that, if other matter may be pleaded by the defendant, he is estopped from asserting anything against the allegation contained in the record.  It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it.  It appears to me that this proposition assumes the very fact to be established, which is the only question in issue.  For what purpose does the defendant question the jurisdiction of the court?  Solely to show that its proceedings and judgment are void, and therefore the supposed record is, in truth, no record.  If the defendant had not proper notice of, and did not appear to, the original action, all the State courts, with one exception, agree in opinion, that the paper introduced, as to him is no record; but if he cannot show, even against the pretended record, that fact, on the alleged ground of the uncontrollable verity of the record, he is deprived of his defense by a process of reasoning that, to my mind, is little less than sophistry.  The plaintiffs, in effect, declare to the defendant, the paper declared on is a

record because it says you appeared; and you appeared because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact. Unless a court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not, therefore, to be estopped from proving any fact which goes to establish the truth of a plea alleging the want of jurisdiction."

A mere recital in a bond cannot preclude the obligor from showing the instrument to be void. The principle determined in *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. ed. 187, relied upon by the appellee, was grounded upon the estoppel arising in favor of an innocent obligee. In that case the obligor executed a bond whereby he secured advantages such as he would have attained had the proceedings throughout been lawful. He had enjoyed the fruits of a contract fairly made, and under the circumstances he could not, when called to account, deny the existence of the power to make it. Here in a void proceeding, where the surety went upon a bond for what proved to be an unlawful object, the obligee, who had participated in that object, can maintain no action upon the bond. In *Daniels* v. *Tearney* (page 420, L. ed. page 188), it was said: "If parties are *in pari delicto,* the law will help neither, but leaves them as it finds them." And concerning the obligee in the bond, the court said (page 419, L. ed. page 188): "The creditor was not to be consulted. His assent was not required. So far as he was concerned, the sheriff could proceed *in invitum.* The option to give the bond, or not, was with the debtor. The presence or absence of the creditor, and his assent or dissent, were alike immaterial. He was powerless in any event to control the result."

In the case before us the complainant, Mattie McC. Hine, secured the decree requiring the trustee to give the bond upon which she brought this suit. The surety had no notice or information except what might be drawn from the instrument or imputed to him by the proceedings. Robert E. Hine, the infant, would appear not to have been devested of his interest

in the property by this proceeding, and if not, and we do not here decide it, it is not clear that he has suffered damage by reason of the breaches of the obligation of this bond. It must not be forgotten that the surety's obligations are *strictissimi juris*.

It would prolong this discussion to consider whether or not the surety upon this bond was discharged from obligation to Mrs. Mattie McC. Hine by reason of extension to Waggaman of the time of payment prescribed by the decree. We have determined that the decree was void, and that the bond given under it was also void.

It is unnecessary to review particularly the affidavit of defense filed with the defendant's pleas. Let it suffice to say that, in our opinion, the defendant's affidavit in conformity with the 73d rule denied the right of recovery by the plaintiff, in whole or in part, and specifically stated, in precise and distinct terms, the grounds of defense, and these grounds were sufficiently proved to defeat the plaintiff's claim. It was matter of record which formed the ground of defense in the affidavit of these defendants, as happened in *Bailey* v. *District of Columbia,* 4 App. D. C. 356. The affidavit of the surety avers in effect that, upon his information and belief, all of the proceedings in the suit in equity were without jurisdiction and null and void, and that the bond was executed for the attainment of an unlawful object, and that such want of jurisdiction, nullity, and illegality constitute part of the, defense of the surety to the action, and avers as another element of defense his discharge as for the interest of Mrs. Mattie McC. Hine arising from the arrangement made between Waggaman, trustee, and himself. The transcript of the record in the equity suit had been annexed to his pleas, wherefore no special statement as to the contents of that record was necessary in the affidavit of defense, as the record would speak for itself. In this case, considering the particularity of the special pleas, a reiteration of each fact contained in the plea was not required in the affidavit under the 73d rule. It should be apparent, from all we have said, that this rule for a summary judgment is hardly applicable to a case such as this, wherein the sufficiency of the defense thus made must be de-

termined upon the pleadings, or upon the pleadings and proof, and not upon a side or collateral question upon the affidavit. Sufficient facts were stated to enable the court to see that, if true, they constitute a good defense.

We need not review the authorities relied upon by the appellee. In our opinion the best-considered cases among them do not conflict with the views we have expressed. The judgment in this case must be reversed, with costs. It is a judgment upon the pleadings, and should therefore be remanded for further proceedings not inconsistent with this opinion, and it is so ordered.                                   *Reversed.*