**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**FRANK B. KILLIAN COMPANY,**
**Defendant-Appellee.**

**No. 15315.**

United States Court of Appeals
Sixth Circuit.

July 30, 1964.

Stephen B. Swartz, Atty., Dept. of Justice, Washington, D. C. (John W. Douglas, Acting Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief), for appellant.

Ray T. Miller, Cleveland, Ohio, for appellee.

Before PHILLIPS, Circuit Judge, LEVIN, District Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This controversy involves a claim by the Government against appellee Frank B. Killian Company for a refund of royalties for mechanical prophylactics manufactured and sold under patents, charged against the Government, and claimed to be excessive. The case has heretofore been before this court on an appeal by the Government, in which an order of dismissal of the District Court was set aside and the case remanded for further proceedings not inconsistent with the opinion of this court, United States of America v. Frank B. Killian Company, 6 Cir., 269 F.2d 491.

In the prior case, the Government's complaint stated that it was a suit of a civil nature under the Royalty Adjustment Act of 1942, 35 U.S.C.A.App. §§ 89–96, as amended. The complaint alleged that the Government and appellee company had entered into a contract pro-

viding that royalties payable on the patented device, manufactured for wartime purposes, be adjusted *retrospectively* under the contractual procedure provided by the Royalty Adjustment Act, rather than *prospectively*, as contemplated and provided by the other sections of the Act itself.

The District Court, because of the language of the government's complaint, was misled into considering the action as one involving a claim under the statute itself, rather than under the contract which the parties had negotiated under the permissive section of the statute; and the opinion of the District Judge disclosed that the order of dismissal was based on the view that the Act provided for adjustment of *future* royalties only. On the appeal of the prior case, this court held that, after the order of dismissal by the District Court, the government's motion for reconsideration and for leave to file an amended complaint, claiming a right of recovery under the contract, should have been granted; and it was for the purpose of enabling the Government to file an amended complaint, based upon the contract, that the case was remanded.

On remand, the District Court vacated its order of dismissal and ordered that an amended complaint might be filed within twenty days thereafter. The prior amended complaint, which had been offered by the Government, but which the District Court had not acted upon in the prior hearing, was thereafter refiled by the Government. After the District Court's order vacating its order of dismissal, appellee company again moved to dismiss the action on the ground that the refiled amended complaint failed to state a claim upon which relief could be granted, since it appeared from such amended complaint that the contract relied upon and the relief sought in such complaint were clearly not provided for in the Royalty Adjustment Act. Appellee's motion to dismiss was denied by the District Court and appellee was ordered to submit an answer to the amended complaint within the specified time.

Appellee subsequently filed an answer to the amended complaint; and both the Government and appellee company moved for a summary judgment. The District Court thereafter granted appellee's motion for entry of a summary judgment, and dismissed the government's amended complaint. From this determination, the Government appeals.

It appears that in the amended complaint, the suit was filed under the general jurisdiction of civil actions commenced by the United States, as provided for in Title 28 U.S.C.A. § 1345. The complaint went on to state that appellee company was the owner of the patents in question; that licensees of the patents were required to pay appellee company certain royalties for the material manufactured; that one of the licensees had sold such material to the United States Army; that the royalties charged to the Government in the procurement of such material was subject to the Royalty Adjustment Act; that prior to October 16, 1944, the Secretary of War made inquiry whether the royalties being paid were unreasonable or excessive; that the Secretary thereafter notified appellee company that he contemplated, in accordance with the provisions of the Act, giving notice that he believed such royalties were unreasonable or excessive. Such a notice was preparatory to entering an order fixing the amount of royalties which the Secretary deemed fair and just, the order carrying with it the possible eventuality of cutting off the payment of royalties to appellee company by its licensees, and leaving appellee company the sole remedy of bringing a suit against the United States to recover such royalties.

After receiving notification from the Secretary of War that he intended to give formal notice under the Act, as above stated, appellee company and the United States, according to the amended complaint, entered into an agreement in which it was recited that appellee company "has requested the Secretary of War to forbear from giving notice under the Act, and in consideration of such for-

bearance and the payment of One ($1.00) Dollar and other good and valuable consideration, receipt of which is hereby acknowledged, both parties intending to be bound hereby, Licensor is willing, as a matter of cooperation in the war effort, to adjust the amounts of royalties for the period of this agreement in the manner and to the extent hereinafter set forth."

Appellee company and the Government thereafter agreed, as part of the contract, that in view of the impracticability of forecasting the availability of raw products in the future, they would, in the future, negotiate to effect appropriate adjustment of royalties charged or chargeable, directly or indirectly, to the Government subsequent to July 1, and that such negotiation should be based upon actual royalty receipts, at intervals, at the option of the Secretary of War, except that the appellee company might request in writing and obtain an adjustment for the interim period, July 1 to December 31, 1944. Moreover, as stated in the amended complaint, in accordance with the agreement entered into by the parties, in consideration of the continued forbearance of the Secretary of War from giving notice under the Act from July 1, 1944, until the next negotiation, if any, or until the service of a notice under the Act, the appellee company agreed that all royalties charged or chargeable to the Government, directly or indirectly, within that period should remain under the jurisdiction of the Government for adjustment by a refund under the Act as might be agreed upon in any future negotiations, or as might be determined at any time after June 30, 1944, by notice and order, under the Act, that the royalties in question were unreasonable or excessive.

The amended complaint alleged that, during the period from January 1, 1942, to December 31, 1945, royalties were charged to the Government and paid to the appellee company in the amount of $414,472.48, of which $10,000 was refunded by appellee company to the Government, pursuant to the agreement

above mentioned. Thereafter, in accordance with the agreement, on May 1, 1946, notice, under the Act, was given by the Government to appellee company following which, on May 23, 1946, a hearing was held before the Royalty Adjustment Board; and, subsequently, on July 26, 1946, the War Department issued an order in which it found that the fair and just amounts of royalties for the period of wartime production amounted to $279,472.48; that of the royalties charged to the War Department and received by appellee company from July 1, 1944, to December 31, 1945, pursuant to the terms of the contract providing for adjustment of royalties by refund, the appellee company was directed to pay to the Treasurer of the United States, the sum of $125,000, being the amount of royalties paid in excess of the amount found to be fair and just by the Government. The amended complaint concluded by alleging that the appellee company had failed and refused to refund the amount of $125,000 found by the War Department to be excessive and was therefore liable in the amount of this sum, for which the Government asked judgment.

It is the contention of appellee company that the case is governed by the application of the Royalty Adjustment Act, above mentioned, and not by the terms of the contract between the Government and appellee company. The Government insists that appellee company is bound by the agreement entered into with the Government; that the agreement created a valid contractual obligation enforceable in a suit by the United States.

The relevant provisions of the Royalty Adjustment Act, according to appellee, and the provisions determining the decisions of the District Court are set forth as follows:

"Sec. 7. This Act shall apply to all royalties directly or indirectly charged or chargeable to the United States for any supplies, equipment, or materials to be delivered to or for the Government *from and aft-*

*er the effective date of the notice provided for in section I hereof.* This Act shall also apply to all royalties charged or chargeable directly or indirectly to the United States for supplies, equipment, or materials already delivered to or for the Government which royalties have not been paid to the licensor *prior to the effective date of the notice provided for in section I hereof.* * * *

"Sec. 1. * * * whenever an invention, whether patented or unpatented, shall be manufactured, used, sold, or otherwise disposed of for the United States, with license from the owner thereof or anyone having the right to grant licenses thereunder, and such license includes provisions for the payment of royalties the rates or amounts of which are believed to be unreasonable or excessive by the head of the department or agency of the Government which has ordered such manufacture, use, sale, or other disposition, the head of the department or agency of the Government concerned shall give written notice of such fact to the licensor and to the licensee. * * *

"Sec. 3. The head of any department or agency of the Government which has ordered the manufacture, use, sale, or other disposition of an invention, whether patented or unpatented, and whether or not an order has been issued in connection therewith pursuant to section I hereof, is authorized and empowered to enter into an agreement, before suit against the United States has been instituted, with the owner or licensor of such invention, in full settlement and compromise of any claim against the United States accruing to such owner or licensor under the provisions of this Act or any other law, by reason of such manufacture, use, sale, or other disposition, and for compensation to be paid such owner or licensor based upon future manufacture, use,

sale, or other disposition of said invention." (Emphasis supplied.)

The District Court held that Section 7 of the Act, in effect, established a jurisdictional requirement before any further action may be taken under the Act. The court held:

"The Act specifically describes the matter subject to its terms, to wit: certain royalties *after the effective date of notice.* It follows from that definition of the scope of applicability of the Act that there can be no application of the Act until notice is given under Section I. *It is not denied that no notice was given until after the delivery of the goods and the payment of the royalties.*

"Further, Section 3 narrowly delimits the power under the Act of any Government official to settle or compromise by agreement. While there is no specific requirement of notice given under the Act, the wording of that section clearly contemplates that necessary step."

The court went on to say:

"Section 3 authorizes the settlement of any claim against the United States arising out of the operation of this Act, whether or not an *order* has been entered under Section I. Orders under Section I result only after the giving of notice. Construing this section with Section 7, it would seem logical that if the powers of settlement were to be broader in scope than the operation of the Act itself as established by Section 7, the law requires specific authorization to that effect. Section 3 also contemplates the settlement of *claims against the United States* by the licensor. There is no reason to extend the area of disputes to be settled to include disputes arising out of the threat of giving notice under the Act. The very wording of the contract here in dispute states the consideration as being the Government's withholding of giving notice under the Act. If this is not

illegal consideration, it is certainly outside of the authority vested in the Government officials by the words of the Act."

The District Court held that the Act narrowly delimited the power under the Act of any government official to settle or compromise by agreement, and, that "[W]hile there is no specific requirement of notice given under the Act, the wording of that section [Section 3] clearly contemplates that necessary step."

The issue before us on appeal is whether the agreement entered into between the United States of America, "hereinafter called the Government," and appellee company, on October 16, 1944, was beyond the authority vested in the officials of the Government by the Royalty Adjustment Act, and whether the remedy of the Government in such a case was limited to the provisions of the Act, without recourse to the "agreement" proviso of Section 3.

The Royalty Adjustment Act, generally, provides that when an invention shall be manufactured for the United States, with license from the owner of the patent, or anyone having the right to grant licenses thereunder, and such license provides for the payment of royalties, the rates or amounts of which are believed excessive by the head of the department or agency of the Government which has ordered such manufacture, the head of the department or agency of the Government concerned shall give written notice of such fact to the licensor and to the licensee; that, after giving the parties the opportunity to be heard, the head of the department is authorized, by order, to fix and specify such rates or amounts of royalties, if any, as he should determine to be fair and just.

The issuance of the notice under the Act was required preliminary to the issuance of an order. The issuance of an order had the effect of authorizing the licensee to pay royalties to the licensor only at the rates or amounts fixed in the order. All rights of action of the licensor against the licensee, based upon the license agreement, were cut off, and, in lieu thereof, the licensor was given a right of action against the Government for the recovery of such sum, as, when added to the royalties fixed in such order, should constitute fair and just compensation, taking into account the conditions of wartime production.

The Act further stated that its provisions should apply to all royalties directly or indirectly charged or chargeable to the United States for any material to be delivered to the Government *from and after the effective date of the notice* above mentioned, and also to any material already delivered to the Government, *which royalties have not been paid to the licensor, prior to the effective date of the notice above mentioned.*

Appellant relies, not upon the foregoing provisions of the Act, but upon the agreement which was entered into on October 16, 1944, between appellee company and the United States of America, authorized by the Act (35 U.S.C.A. § 91, 1946, ed.) under which determination of excessive royalties, if any, during the period of the agreement, was subject to future negotiations, with the provision that they should remain under the jurisdiction of the Government for adjustment by refund, under the Act, as might be agreed upon in such future negotiations, or as might be determined at any time after June 30, 1944, by an order under the Act.

In the opinion of this court on the prior appeal, it was said that the agreement above mentioned was "a contract which the Executive Department of the Government undoubtedly had full authority to execute and perform."

It is asserted by appellee company that the above-quoted statement was dicta, "based on general principles of law unrelated to the particular circumstances of this action"; that the District Court was correct in holding that, since the powers of settlement provided for in the statute were broader in scope than the operation of the Act itself, the law required specific authorization to that effect; that the statute contemplated the settlement of claims against the United States by the

licensor, and this is no reason to extend the area of disputes to be settled to include disputes arising out of the threat of giving notice under the Act; that the very wording of the contract, here in dispute, stated the consideration as being the Government's withholding of giving notice; and that, if this is not illegal consideration, it is outside the authority vested in the government officials by the words of the Act.

In spite of the different interpretations that might be placed upon the technical provisions of the Act, we are of the opinion that the agreement in question was within the contemplation of the relevant provision of the Act; that it was not outside the authority vested in the Government by the statute; and that the Government had full authority to execute and perform such contract. Under Title 28 U.S.C.A. § 1345, the Government was authorized to bring suit upon the agreement. Jessup v. United States, 106 U.S. 147, 151, 1 S.Ct. 74, 77, 27 L.Ed. 85; see United States v. Cooper Corp., 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed. 1071; cf. Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694. It is to be noted that, in this case, the parties were designated as "The Frank B. Killian Company" and "The United States of America."

Many statements are made on behalf of appellee company to show the unfairness or lack of equity of the government's claim. It is said that the notice and order, *provided in the contract—which was specifically authorized by the Act*—were given in 1946, and no action was filed by the Government until eleven years later; that appellee company consisted of a partnership of twenty-one people, most of whom have since died; that their estates have been closed, and that only a few of these original partners are still living; that the company was organized long prior to the war, and was managed by a lawyer who had no interest in the company, and whose sole duty was to receive royalties and make immediate disbursement to the owners; that none of the partners knew anything about the affairs of the company except to receive their dividends; that all of them paid income taxes on earnings so received for each current year; that the company never sold any goods; made no deliveries; received no money from the Government, and went out of business in 1949; that all royalties on the material in question were prepaid prior to the enactment of the Royalty Adjustment Act; and that the Royalty Adjustment Board fixed an arbitrary amount in the sum of $125,000 against the appellee company, which was unjust and unfair and in disregard of the facts. Whatever the true situation, and whatever merit resides in these allegations, may be determined upon a retrial.

In accordance with the foregoing, the judgment of the District Court is set aside, and the case remanded for adjudication on the merits, and in accordance with the views set forth in this opinion.