LAFFAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 9, 1903.)

No. 110.

1. ACTION BY UNITED STATES—EVIDENCE—CERTIFIED COPY OF BOND.
A copy of a bond given by a public officer, certified under seal of the Treasury Department by an acting secretary of the treasury, is admissible in evidence in a suit by the United States on such bond, under Rev. St. § 886, as amended by Act March 2, 1895, c. 177, § 10, 28 Stat. 809 [U. S. Comp. St. 1901, pp. 670, 671], providing that transcripts from the books and proceedings of the department, and copies of bonds and contracts certified by the "secretary or an assistant secretary," under the seal of the department, shall be admissible.

2. SAME—BOND OF INTERNAL REVENUE COLLECTOR.
A bond given to the United States by a collector of internal revenue, conditioned for the faithful performance of their duties by all deputies appointed by him, is valid and enforceable, although such condition is not required by the statute.

3. SAME—EVIDENCE OF BREACH.
A statement of the account of a public officer from the books of the Treasury Department, properly certified, and showing a balance due the United States, is sufficient prima facie evidence of a breach of his bond in failing to account for public money or property.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, entered upon a verdict directed in favor of defendant in error, who was plaintiff below. The action was brought against defendant, impleaded with cosureties and a former collector of internal revenue for the district of Montana, Ambrose W. Lyman, now deceased, to recover $8,232.93 public moneys unaccounted for by the

said Lyman, and alleged to have been taken by Lyman's deputy collector, one Cabell. When the action came on for trial the complaint was dismissed as to the others, on the ground that at the time of the commencement of the action they were, not residents of the Southern District of New York, and the court had no jurisdiction as against them. Judgment was entered against Laffan only.

Franklin Bartlett, for plaintiff in error.
Arthur M. King, for defendant in error.

Before LACOMBE and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). It is contended that the trial court erred in admitting in evidence a certified copy of the bond upon which the action was brought, because said copy was not properly certified. The United States Revised Statutes provide:

"Section 886. When suit is brought in any case of delinquency of a revenue officer, or other person accountable for public money, a transcript from the books and proceedings of the Treasury Department, certified by the register and authenticated under the seal of the department, or, when the suit involves the accounts of the War or Navy Departments, certified by the auditors respectively charged with the examination of those accounts, and authenticated under the seal of the Treasury Department, shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment and award execution accordingly. And all copies of bonds, contracts, or other papers relating to, or connected with, the settlement of any account between the United States and an individual, when certified by the register, or by such auditor, as the case may be, to be true copies of the originals on file, and authenticated under the seal of the department, may be annexed to such transcripts, and shall have equal validity, and be entitled to the same degree of credit which would be due to the original papers if produced and authenticated in court: provided, that where suit is brought upon a bond or other sealed instrument, and the defendant pleads 'non est factum,' or makes his motion to the court, verifying such plea or motion by his oath, the court may take the same into consideration, and, if it appears to be necessary for the attainment of justice, may require the production of the original bond, contract or other paper specified in such affidavit." [U. S. Comp. St. 1901, p. 670].

This section was amended by the act of March 2, 1895, c. 177, § 10, 28 Stat. 809 [U. S. Comp. St. 1901, p. 671], as follows:

"The transcripts from the books and proceedings of the Department of the Treasury and the copies of bonds, contracts and other papers provided for in section eight hundred and eighty-six of the Revised Statutes shall hereafter be certified by the secretary or an assistant secretary of the Treasury under the seal of the department."

In the case at bar the form of the certificate to copy of the bond is not criticised. Its attestation reads:

"In witness whereof, I have hereunto set my hand and caused the seal of the Treasury Department to be affixed, on the day and year first above-written.                                    O. L. Spaulding,
        "[Seal]                          Acting Secretary of the Treasury."

The objection raised to the admission in evidence of the document thus certified is that "the statute requires it should be cer-

tified by the secretary or assistant secretary of the Treasury, and it is certified by an alleged acting secretary of the Treasury, who is not the secretary or an assistant." This objection is disposed of by the opinion of the Supreme Court in N. Y. & Maryland R. R. v. Winans, where the court held:

"The objection taken to the patent, that it is signed by 'an acting commissioner of patents,' and that the record contains no averment nor proof of his title to the office, is not tenable. The court will take notice judicially of the persons who from time to time preside over the Patent Office, whether permanently or transiently, and the production of their commission is not necessary to support their official acts." 17 How. 40, 15 L. Ed. 27.

It is further contended on the brief that the bond is not the one provided for by the statute (section 3143, U. S. Rev. St. [U. S. Comp. St. 1901, p. 2041]), in that it guaranties the faithful discharge of their duties by all the deputies appointed by the collector, whereas the statute only requires a bond for the faithful performance of the collector's own duties, and a faithful accounting by him for all public moneys which may come into his hands. This point was not pressed in oral argument, and we assume it has been abandoned. It is clearly unsound. U. S. v. Hodson, 10 Wall. 395, 19 L. Ed. 937; Jessup v. U. S., 106 U. S. 147, 1 Sup. Ct. 74, 27 L. Ed. 85.

The transcript from the books and proceedings of the Treasury Department which, under section 886, Rev. St. [U. S. Comp. St. 1901, p. 670], was put in evidence to prove the delinquency of the collector, was also certified by the acting treasurer. It was further objected to its admission that it "failed to show any breach of the bond." Inasmuch as it showed that on the accounting of June 21, 1897, there was a balance due the United States of $8,380.68, and that on the accounting of October 21, 1897, a credit item reduced that balance to $8,232.93, this objection seems wholly unsound. The circumstance that above the signature of the certifying auditor there appear two sets of initials, apparently of the clerks who made up the statement, is wholly immaterial. The statement of account does not contain any items indicating that the accounting officers had exercised any judicial function by determining that some particular item was "illegally claimed" or "illegally retained," as in U. S. v. Case (D. C.) 49 Fed. 270. It is a plain bookkeeper's statement of account, correctly certified under the statute, and was prima facie evidence that Lyman had failed to turn over public moneys or to account for public property (revenue stamps) to the amount claimed.

It is contended, finally, that a change in the law subsequent to the execution of the bond released the sureties, upon the ground that such change increased the liability of the collector, by exposing him to an additional risk of loss through the improper acts of others committed without his fault or knowledge. The bond was given in 1894. At that time there were a certain number of deputy collectors who, in the performance of their duties, came into the possession of public moneys, which it was their duty to turn over to the collector, or directly to the United States. For the faithful return of all such moneys by his deputies the collector was himself

responsible to the government, and, as we have seen, the bond expressly covered such responsibility. Manifestly it was most important—it might, indeed, become vitally necessary for his own protection—that he should have the power of selection of the men for whose faithfulness in handling public moneys he was to be held responsible, and should also have the power of removal. When the bond was given he had both these powers. He appointed the deputies, having thus full opportunity to make such careful inquiry as he might desire into their past history and into their reputation for integrity. Despite the most careful inquiry, however, mistakes were possible. When the collector became satisfied that he had made such a mistake, he had full power to dismiss any of the deputies whom he had grown to distrust, without being required to defend his action in so doing, or without the necessity even of assigning any cause. When the bond was executed, deputy collectors of internal revenue were not in the classified civil service. They were included therein, apparently, in November, 1896—the regulations are printed in the record in such disjointed shape that it is very difficult to determine. The regulations were also amended by adding the following:

"No removal shall be made from any position subject to competitive examination except for just cause, and upon written charges filed with the head of the department or other appointing officer, and of which the accused shall have full notice and an opportunity to make defense."

It is forcibly contended that this change greatly increased the collector's risk, and, in consequence, the risk of his sureties. It might very well be that conversation or association with one of his deputies might lead a reasonably prudent collector to such a conviction of his untrustworthiness as would call for his immediate dismissal, although there might be no specific act which could be made the basis of "charges." Or the collector might learn of some event in the deputy's past history which would make it unsafe to keep him, although it might not be good cause for removal under the amended regulations. Before the amendment the collector would have an opportunity of protecting himself which he would not have afterwards, and for that reason it is contended that the risk of the sureties has been increased to such an extent as to make the bond void. The indebtedness of Lyman, for which this suit is brought, arose by reason of the embezzlement and defalcation of one Cabell, a deputy collector appointed by Lyman.

The effect of such change on the liability of sureties is a question which has been argued by both sides, orally and in the briefs. An extended investigation of the authorities, including many not cited by either side, indicates that the question is a very interesting one, to which it might be difficult to find an answer that would harmonize with all the authorities. That investigation, however, has proved to be merely an excursion into the realms of academic law; no such question is presented by the record, and it would have saved this court some time, which might have been more usefully employed, if counsel on one side or the other had examined the record suffi-

ciently to discover precisely what is before the court. As was said before, the excerpts from the civil service regulations are so printed that it is not possible to determine the dates of the promulgation of some of the quoted sections. By written stipulation, however, it is agreed that the amendment which made deputy collectors (and others) irremovable except for just cause, upon written charges, was adopted on July 27, 1897. The transcript of account shows that the loss entailed by the embezzlement of Cabell had already accrued, for Lyman was found indebted to the United States in the amount of $8,380.68 on the accounting of June 17, 1897, and between that date and final accounting—October 21, 1897—nothing is charged against him, the only entry on either side being a credit to him for $147.75 cash deposited with the Treasury Department.

The judgment is affirmed.