UNITED STATES v. DU PEROW.

(District Court, N. D. Ohio, W. D.    October 15, 1913.)

No. 7,168.

1. UNITED STATES (§ 50*)—SUITS TO RECOVER FROM OFFICERS—EVIDENCE.
   In an action by the United States against an army officer charged with accountability for supplies, the certificate of the appropriate auditor of the Treasury Department, properly authenticated in accordance with U. S. Comp. St. 1901, § 886, showing property unaccounted for by defendant, when introduced in evidence makes a prima facie case for the government both as to the property and its value, properly charged at its cost to the government, and the burden rests on the defendant to account for it or to prove any claimed deterioration in its value.
   [Ed. Note.—For other cases, see United States, Cent. Dig. § 34; Dec. Dig. § 50.*]

2. UNITED STATES (§ 50*) — SUITS TO RECOVER FROM OFFICERS — EVIDENCE — "CREDIT."
   In an action by the United States against an army officer charged with failing to account for supplies in his custody, a claim that he turned such supplies over to the proper officer to receive them is one for a "credit," within the meaning of Rev. St. § 951 (U. S. Comp. St. 1901, p. 695), which provides that in such suits "no claim for a credit shall be admitted upon trial except such as appear to have been presented to the accounting officers of the treasury for their examination," unless the failure to so present it is excused, etc., and where the defendant was repeatedly urged by such officers during three years to present any matter which would remove the charge appearing against him on the books, but failed to do so, evidence to establish such a defense is not competent.
   [Ed. Note.—For other cases, see United States, Cent. Dig. § 34; Dec. Dig. § 50.*
   For other definitions, see Words and Phrases, vol. 2, pp. 1711–1713; vol. 8, p. 7622.]

At Law. Action by the United States against Benoni F. Du Perow. Trial without a jury, and judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

U. G. 'Denman, Dist. Atty., of Cleveland, Ohio, for the United States.

Wing, Myler & Turney, of Cleveland, Ohio, for defendant.

KILLITS, District Judge. In this case the government sues the defendant at law upon a cause of action alleging that the defendant is indebted to the United States in the sum of $1,285.78, with interest from June 30, 1902, being the money value of quartermaster's supplies, property of the United States, which had come into the possession of the defendant as captain of the Fifth Ohio Volunteer Infantry, War with Spain, and for which the defendant has failed to account; that sum being charged to him on certificate of the Quartermaster General of the United States Army, and duly certified by said Quartermaster General on the date above mentioned.

The defense is a denial of the indebtedness. A jury was waived and the case tried to the court, but, of course, the issue is to be determined by the same rules touching the admissibility of testimony as if the case were tried to a jury.

[1] The case is brought under the provisions of section 3624, Compiled Statutes of the United States, at the request of the Comptroller of the Treasury, and the government rested upon the certificate of the accounting officers of the Treasury Department that a balance had been audited in the above amount against the defendant. This certificate is offered under section 886, Compiled Statutes,. which provides, in substance, that, when suit is brought in any case of delinquency of any person accountable for public money, "a transcript from the books and proceedings of the Treasury Department, certified by the registrar and authenticated under the seal of the department, or, if the suit involves the accounts of the War and Navy Departments, a certificate by the auditors respectively charged with the examination of these accounts and authenticated under the seal of the Treasury Department, shall be admitted as evidence and the court trying the case shall be authorized to confer judgment and award execution according to law." With it the government rested, having made, in the opinion of the court, a prima facie case. The certificate was properly made under the Act of March 29, 1894, c. 49, 28 Stat. 47 (U. S. Comp. St. 1901, p. 157), and, as applied to the transcript prepared under section 886, above referred to, makes a prima facie case. United States v. Harrill, 26 Fed. Cas. 169; Moses v. United States, 166 U. S. 571, 597, 17 Sup. Ct. 682, 41 L. Ed. 1119; Laffan v. United States, 122 Fed. 333, 58 C. C. A. 495.

Testimony in behalf of the defendant was received under the objection of the government and was to the effect that, although he obtained no receipts therefor, Capt. Du Perow had in fact turned over to the proper officer of the Quartermaster's Department—one Capt. Williams—the various articles making up the account of his alleged deficiency; the explanation being that in the confusion incident to a hurried departure from the unsanitary conditions in which Capt. Du Perow's regiment found itself the precaution of obtaining receipts was omitted, the two officers dealing with each other through their respective clerks.

Much testimony under the objection was received from various persons in position to observe and know the facts at the time, being other persons connected with the army, tending to show that substantially all the missing property was thus turned over by the defendant to Capt. Williams, and the court is inclined to believe that, substantially at least, the property in question came into the possession of Capt. Williams from the defendant, and there could not be any question but that Capt. Williams was the proper officer of the government to receive such property from the defendant.

[2] The ground of objection to the receipt of this testimony, however, is an exceedingly serious one. In the settlement of his account with the government, by way of credits upon the charges of property against him, he would be entitled to claim credit for such items as he turned over to his successor or the proper officer appointed to receive it. Section 951, Revised Statutes of the United States, provides:

"In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the accounting officers of the treasury, for their examination, and to have been by them disallowed, in whole or in part, unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting any claim for such credit at the treasury by absence from the United States or by some unavoidable accident."

No claim is made in the instant case that either situation is present which prevents the operation of this statute, and it appears affirmatively that the defendant has not brought himself within the provisions of this statute, so that any claim of his that he had delivered this property to the proper officer of the government becomes competent. It appears from the correspondence between the Quartermaster General's Department and Capt. Du Perow that for a period of time from May, 1900, until August, 1903, he was repeatedly requested to either demand a board of survey to exonerate him from the charges against him, or, failing that, to forward to the department his affidavits "supported by such other vouchers or affidavits of the facts as to your failure to properly account for funds and property of the Quartermaster's Department, with which you are charged, as may be obtainable by you, with a view to considering your relief from further accountability therefor under the above mentioned act," and he was assured, "in case no corroborative evidence can be obtained, it should be so stated" in the affidavit. Attention was called, in the letter of April 29, 1903, from which the above quotation is made, to the Act of March 3, 1903, c. 990, 32 Stat. 955, which placed a limitation of two years within which all claims for credit in cases of this character should be submitted to the treasury officers, and on August 8, 1903, he was requested to reply to this letter of April, 1903, "so that the charges may be removed." Notwithstanding this assiduity on the part of the Quartermaster General's Department, it appears that Capt. Du Perow took no steps towards perfecting or formally presenting for allowance to the accounting officers of the treasury the claims for credit which he now presents to the court.

Against the contention of the government that section 951 applies to the case before us, it is argued by defendant that, in offering testimony tending to show actual delivery of the property in question to the proper government agent, he is neither claiming credit nor set-off. Of course, the question of set-off is not in the case, but we are clearly of the opinion that his defense is a claim for credit within the meaning of that term as employed in the statute quoted. He was charged with receipt of certain property of a certain value. On the redelivery by him according to regulations of any item of such property, there should have been entered on the credit side of his account such article with the pertinent value. This is obtaining "credit" on his account, having regard to the nature of his business relation with the government, involving, as it did, the power to turn back to the government any article at the value charged, or money representing such value. This is precisely the meaning of the word as defined in Webster's International Dictionary, Title Credit, par. 10, cl. b:

"The side of an account on which are entered all items reckoned as values received from the party or the category named at the head of the account; also, anyone, or the sum of these items; the opposite of debit; as, this sum is carried to one's credit, and that to his debit; A. has several credits on the books of B."

Nor it is tenable here to insist that the government must fail because it has not proven values other than those attaching to new articles, whereas the property involved had depreciated through use and exposure. It is not the theory of the government, as we understand it, that the auditor's charge is conclusive; it is so neither as to identity of articles charged nor as to values; defendant may dispute in both respects. Not only the nature of the business but because of the application of section 886, the auditor's charge establishes a prima facie case in both respects; the government must charge the officer with some value, and that of the cost to the government or that when issued is the convenient and proper statement. Knowledge thereafter of the deterioration of value through use or otherwise is peculiarly with the officer in possession. Whether or not section 951 should be interpreted to require the defendant to first submit to accounting officers of the treasury his claim that the property had not the value, when he was called upon to account for it, existing when debited to him, the fact remains that every consideration thrusts upon him the necessity of introducing testimony of facts best known to him, including this. He is chargeable with knowledge of the values placed to his debit, and no surprise is involved in the government's insistence that he should be held to that charge until he brings facts from his own knowledge tending to diminish it. The government could not do business on any other basis. In this case no evidence whatever of value was offered by the defense, but proof was made that deterioration of value, to an unproven extent, had occurred. These questions have been in some measure settled by the decision of Smythe v. United States, 188 U. S. 156, 23 Sup. Ct. 279, 47 L. Ed. 425. Respecting the failure of defendant to even offer proof of value against the government's prima facie proof thereof, we feel

that we are in this holding in harmony with even the dissenting opinion in that case.

Under these circumstances, it seems to us that the court has no alternative than to sustain the objections to the admissibility of the testimony that the property was redelivered, although, as we have suggested, were it admissible, it would convince the court that a very substantial amount of the property charged against him he had actually turned into the custody of a proper officer of the United States Army, as we would also be convinced that at the time it left defendant's custody it had suffered great depreciation in value.

We can find no fault with the statutes in question. Discipline in the army is part of the essence of its efficiency, and the laws which have been called into operation in this case are well calculated to enforce the rigid accountability and secure the prompt settlement which are very necessary to be had in all public transactions, and especially in military affairs. As this case must be disposed of upon legal principles, we cannot but hold that, for want of competent evidence by way of defense, the defendant has failed to meet the government's prima facie case, and that judgment should go against him, leaving it to Congress to relieve the defendant, if it will. from a burden which seems to be unjust, but which is upon him very largely because of his own neglect to save himself when opportunity was offered.