LaRAmore, Judge,
delivered the opinion of the court:
Plaintiff, a former Supply Corps Officer, United States Naval Reserve, brings this action to recover the sum of $4,039.43, which represents the amount of pay and allowances withheld and applied in partial satisfaction of an alleged indebtedness to the United States resulting from losses alleged to exist after investigation of his accounts as Officer-in-Charge at the United States Naval Commissary Store, Mare Island Naval Shipyard, Vallejo, California.
Plaintiff, a citizen of the United States, a resident of the State of California, on February 15, 1943, entered on active duty in the United States Navy in the rank of lieutenant (junior grade) and was immediately assigned as the Assistant Officer-in-Charge at the United States Naval Commissary Store (hereinafter referred to as Commissary Store) Mare Island Naval Shipyard, Vallejo, California. The plaintiff had received no Navy training or indoctrination before entering upon his duties.
On December 18,1943, he became the Officer-in-Charge at the Commissary Store, serving in that capacity until May 1946. He handled money and signed public vouchers, and was considered a disbursing officer.
*565 The Commissary Store was not intended to operate for profit, but for the purpose of providing authorized personnel the opportunity to purchase stock at the lowest possible prices. A profit balance of approximately $15,000 was maintained in the store. If the profit balance were to exceed or be less than that figure, the prices were to be adjusted to return to such a balance during future operations, even if it were necessary to operate temporarily at a loss.
Plaintiff pursued a system with respect to the keeping of a voucher-control record that had been previously inaugurated when the store was established. On the average of three or four times a year the Bureau of Supplies and Accounts made periodic inspections of the commissary operations and no recommendation was ever made for any change in the method of keeping the records. Criticism was made from time to time that the store was understaffed and plaintiff was commended on several occasions for the manner in which he was operating the store.
After the cessation of hostilities in World War II, Navy enlisted men and Reserve officers were being systematically discharged and released under the existing point system. The plaintiff was eligible for release from active duty, but agreed to remain in the service for approximately 14 months at the specific request of his superior officer. After August 1945, the plaintiff was confronted with a constant turnover of his store personnel, and had assigned to him an inadequate, inefficient, and incompetent force to operate the Commissary Store. After August 1945, the operation of the Commissary Store was further complicated by large consignments of Navy surplus and excess material, such as clothing, cameras, silverware, radios, phonographs, etc., to be disposed of to Navy personnel. Before that time the Commissary Store was of the nature of the ordinary retail grocery operation. The plaintiff complained in person to the Admiral in command of the Mare Island Naval Shipyard that the added volume of stock and material could not be handled safely with the personnel assigned. He was instructed to proceed to handle the excess material in order to benefit the Mare Island personnel in the disposal program. The occasion of the interview with the Admiral was brought about by com *566 plaints that civilian stores elsewhere were carrying items of Navy surplus material which were not available at the Commissary Store. The surplus material at the store was to have a markup of five percent of the direct cost to the Navy Department. At one time the plaintiff requested in writing that the surplus material be transferred to another store, which request was denied.
In the operation of the Commissary Store, incoming merchandise was received and placed in a bulk storeroom, at which time a record was to be made on stock cards. Whenever stock was transferred from the storeroom to the salesroom, appropriate notations were to be made on the stock cards. The only accounting of disposal of stock in the salesroom was in the form of cash receipts on sales, recorded by cash registers.
For each of the months of March and April 1946, the Commissary Store personnel compiled an inventory of the stock on hand which reflected a loss of stock, or operational loss, to the extent of about $10,000 on each inventory.
Because of the type of personnel assigned to the store the plaintiff had no confidence in the results of the inventory and believed them to be incorrect. He made a cursory check and discovered some items missing from the inventories, and thereupon added $10,000 to each inventory.
On or about May 18, 1946, a Board of Investigation was convened and investigated the Commissary Store. Their findings showed an operating loss to the Commissary Store of $21,022.34, and the opinion of the board was that it could hot definitely be determined how or when said operating loss occurred, and it was their opinion that said loss could have been incurred by any one or a combination of the following, which may have extended over an indefinite period:
(a) Errors in selling price set below cost.
(ij Partially by pilfering by customers.
(c) Inefficiency and possible dishonesty by cash register operators.
(d) Possible fraudulent arrangement between personnel of store and dealers to receipt for material not delivered.
(e) Theft by personnel of store.
*567 . Plaintiff was then tried by a court-martial board and was found guilty on two charges. The first charge was that of falsifying the inventories. The second charge was inefficiency in office which was the keeping of an improper voucher-control record. The court-martial board sentenced the plaintiff to be dismissed from the United States naval service and to lose pay amounting to $500. This sentence was later remitted and plaintiff was permitted to resign under honorable conditions.
The plaintiff’s orders releasing him from the naval service directed his disbursing officer to settle his account.
However, at the time of plaintiff’s release from active duty on July 21, 1947, his pay was withheld in the sum of $4,039.43, none of which has ever been paid, although plaintiff made demand therefor at the time of his release from duty.
The facts in this case are not in dispute and the issue is whether or not the Bureau of Supplies and Accounts was justified in withholding plaintiff’s pay. The Bureau of Supplies and Accounts relied solely on the Act of March 29,1894, 28 Stat. 47, as amended by the Act of June 10,1921, 42 Stat. 24,31U. S. C. 89-90, for its authority.
Defendant cites, in support of its contention that plaintiff’s compensation was properly withheld, the case of Gratiot v. United States, 14 U. S. 106, 15 Pet. 336; and The Atchison, Topeka and Santa Fe Railway Company v. United States, 118 C. Cls. 194. We are in complete accord with the rulings in the above-cited cases which hold that withholding plaintiff’s compensation was required by law and in addition to its legal requirement to withhold payment of any compensation the government had the common right as a creditor to apply unappropriated moneys of a debtor, in its hands, in satisfaction or partial satisfaction of a debt due it. However, the language of the act relied on (Act of March 29,1894, supra) authorizes the debiting of the account of an officer for “any charge against any officer or agent entrusted with public .property arising from any loss accruing by his fault to the government as to the property so entrusted to him.” ■(Italics supplied.)
*568 •' Tlie decision of the court-martial board does not establish a- loss to the government nor does it indicate any fault on the part of the plaintiff as to the so-called operating loss. Furthermore, there is a total lack of evidence in this case establishing a loss to the government or that if a loss occurred, it accrued by the plaintiff’s fault.
The case of United States v. Du Perow, 208 Fed. 895, cited by the government and relating to the certificate of the appropriate auditor, when introduced in evidence, makes a prima facie case for the govermnent and shifts the burden on the defendant to account for it or to prove any claimed deterioration in its value. We do not deem it necessary to discuss the case in the light of the foregoing conclusions.
' In view of the circumstances and evidence in this case, we are of the opinion that no loss was suffered by the government through the fault of plaintiff and that plaintiff should recover from defendant the pay and allowances withheld in the sum of $1,039.43.
It is so ordered.
: Madden, Judge; Whitaker, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of .Commissioner Boald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
• • 1. The plaintiff is a citizen of the United States and a resident of the State of California.
• ■ -2. On February 15, 1943, the plaintiff entered on active duty in the United States Navy in the rank of lieutenant (junior grade) and was immediately assigned as the Assistant Officer-in-Charge at the United States Naval Commissary Store, Mare Island Naval Shipyard, Vellejo, California. The plaintiff had received no Navy training or indoctrina-, fion, before entering upon his duties, but had been employed as; a store manager by a multiple-store retail grocery Company.
On December 18, 1943, he became the Officer-in-Charge at the Commissary Store, serving in that capacity until May *569 1946. ¡While-he paid no salaries, he handled money and signed public vouchers, and was considered a disbursing officer.
3. Pursuant to a policy established by the Bureau of Supr plies and Accounts, Navy Department, the Commissary Store was not intended to be operated for profit, but for the purpose of providing authorized personnel the opportunity to purchase stock at the lowest possible prices. The prices were fixed on the basis of the direct cost of the articles to be sold, with a markup sufficient only to cover some minor éxpenses and to provide and maintain a profit balance of approximately $15,000. If the profit balance were to exceed or be léss than that figure, the prices were to be adjusted to rfeturn to such a balance during future operations, even if it were necessary to operate temporarily at a loss.
An example of the minor charges included in the price-fixing problem was a small payment made from time to time to the Bureau of Supplies and Accounts to contribute to a fund created to purchase cash registers and other machine equipment to be furnished to various commissary stores. The Commissary Store operations were not charged with any such major expenses as pay of store personnel or cost of building space or maintenance. Navy enlisted personnel was assigned to the Commissary Store to carry on its operations.
4. As was his duty, the plaintiff used a voucher-control-record system of keeping accounts, which was a running record by total amounts of all requisitions submitted and of all receipt and expenditure vouchers accomplished for stock received and sold by the Commissary Store. This method had been inaugurated when the store was established, and in particular was applied by the plaintiff and his predecessor as Officer-in-Charge. The actual record was and had been prepared by an enlisted storekeeper and checked by the Officer-in-Charge against the vouchers. ;
5. On the average of three or four times a year, the Bureau of Supplies and Accounts made periodic inspections of the Commissary Store operations. The voucher-control system of accounting was approved, and no recommendation was ever made for any change in the method of keeping records. The criticism was made from time to time that the store was *570 understaffed. The plaintiff was commended on several occasions for the manner in which he was operating the store.
6. On January 29, 1946, the Commandant of the 12th Naval District stated in writing concerning a report of inspection of the Commissary Store: “The commandant is pleased to note that the Commissary Store is in satisfactory condition and that excellent service is being furnished.”
7. After the cessation of hostilities in World War II, Navy enlisted men and Reserve officers were being systematically discharged and released under the existing point system. The plaintiff was eligible for release from active duty, but agreed to remain in the service for approximately 14 months at the specific request of his superior officer. After August 1945, the plaintiff was confronted with a constant turnover of his store personnel, and had assigned to him an inadequate, inexperienced, and incompetent force to operate the Commissary Store.
8. After August 1945, the operation of the Commissary Store was further complicated by large consignments of Navy surplus and excess material, such as clothing, cameras, silverware, radios, phonographs, etc., to be disposed of to Navy personnel. Before that time the Commissary Store was of the nature of the ordinary retail grocery operation.
The plaintiff complained in person to the Admiral in command of the Mare Island Naval Shipyard that the added volume of stock and material could not be handled safely with the personnel assigned. He was instructed to proceed to handle the excess material in order to benefit the Mare Island personnel in the disposal program. The occasion of the interview with the Admiral was brought about by complaints that civilian stores elsewhere were carrying items of Navy surplus material which were not available at the Commissary Store. The surplus material at the Store was to have a markup of five percent of the direct cost to the Navy Department.
At one time the plaintiff requested in writing that the surplus material be transferred to another store, which request was denied.
. 9. In the operation of the Commissary Store, incoming merchandise was received and placed in a bulk storeroom, *571 at .wbicb time a record was to be made on stock cards. Whenever stock was transferred from the storeroom to the salesroom, appropriate notations were to be made on the stock cards. The only accounting on disposal of stock in the salesroom was in the form of cash receipts on sales, recorded by cash registers.
Periodic inventories at cost price were taken to determine the extent of profit or loss in the store operations. It is obvious that errors in receipt of stock, or in keeping of stock cards, or in price-fixing, or in cash register operations, would be reflected in loss of inventory.
No inventory or other accounting records concerning the Commissary Store operations were offered in evidence!
10. For each of the months of March and April 1946 the Commissary Store personnel compiled an inventory of the stock on hand which reflected a loss of stock, or operational loss, to the extent of about $10,000 on each inventory.
Because of the type of personnel assigned to the store, the plaintiff had no confidence in the results of the inventories and believed them to be incorrect. He made a cursory check and discovered some items missing from the inventories and thereupon added $10,000 to each inventory, although the missing items discovered by him are not shown to have had any reasonable relationship to that amount.
11. On or about May 18, 1946, a Board of Investigation was convened and conducted an investigation of the Commissary Store. The report of the board was as follows:
FINDING OF FACTS
1. That the gross loss shown on the Commissary Store Balance Sheet for the period ending 18 May 1946 was $21,022.34. '
■2. That the net (accumulated) profit shown on the Commissary Store Balance Sheet for the period ending 30 April 1946 was $14,368.72, while for the period ending 18 May 1946, the Balance Sheet showed a net loss of $7,549.92.
3. That the total money value of the inventory taken on 19-20 May 1946, was $85,602.75.
4. That the cash account and the cash on hand was correct.
*572 5. That the Commissary Store Balance Sheet submitted with the February return was incorrect, due to approximately $10,000 worth of inspection reports being omitted from the Reconciliation Statement for Receipts from Purchase.
6. That the Commissary Store Balance Sheet submitted for the months of March and April 1946 were falsified in that the value of stores on hand for each month was increased approximately $10,000 over the actual inventory values.
7. That Emilio Gianni, storekeeper first class, had knowledge of the falsification of the March and April returns.
8. That the Commissary Store was inspected on 28 January 1946 by Lt. Comdr. R. J. Harrell (SC) TJ. S. Navy, Assistant to the District Supply Officer, Twelfth Naval District, and the only defect noted was that the Financial Control Record was posted partly in ink and partly in lead pencil.
9. That Chief Pay Clerk Turnbow was assigned re-responsibility for excess material.
10. That physical arrangement of the store did not provide necessary protection to personnel responsible for stores kept therein. All the doors leading thereto were open during working hours. Customers and office personnel entered and passed through the bulk storeroom.
11. That material was received simultaneously with the issue of material so that it was impossible for the bulk storeroom keeper to personally check both.
12. That officers of the store did not normally inspect stores upon receipt.
18. That enlisted personnel technically in charge of the bulk storeroom, the sales room, and the excess material, received stores into their custody without personal check at time of receipt.
14. That on relief of the bulk storeroom keeper, no inventory was taken.
15. That the bulk storeroom keeper had responsibility for determining quantities and preparing orders for signature of the officer in charge for most of the items carried by the store.
16. That no stock cards were kept for excess material.
17. That monthly inventory of excess material was inadequate and was not taken under the personal supervision of the officer in charge.
18. That all excess material was not checked by an officer.
*573 19. That on 18 May 1946 there were only six rated storekeepers assigned to duty in the Commissary Store, ■whereas.the allowed complement was 14.
-20: That the officer in charge made frequent requests appealing for qualified personnel to fill his complement and appealing for an increase in his complement.
21. That Lt. Comdr. Meredith requested authority to transfer all excess material from the Commissary Store to the Ship’s Service Store, which request was denied.
22. That store personnel were seldom required to work beyond normal working hours.
■ 23. That numerous and frequent errors were made on the stock cards.
24. That cancellations of orders were not noted in all cases in the order book.
25. That some material was received without a covering order.
26. That Order and Inspection Reports were not kept under lock and key prior to preparation of Public Vouchers by the officer in charge or his officer assistant.
27. That summarized and unsummarized receipts from purchase were not separated.
■ 28. That official store records were divided between the main office and the bulk storeroom office.
29. That there was no personal voucher control record kept by the officer in charge.
30. That the actual changes in selling price of most items was made by the bulk storeroom keeper.
31. That monthly inventories were not signed by the various custodians.
32. That identical articles on sales room shelves were marked with different prices.
33. That inexperienced personnel were stationed on the cash registers and at the butcher shop counter.
34. That a petty officer was designated to stand by the cash register when purchases by store personnel were being rung up; however, at times conflicting duties carried him elsewhere.
35. That Chief Commissary Steward Martin signed for various types of stores with no further responsibility therefor.
36. That daily deliveries such as bread, milk, and pastries were not signed for by the sales room storekeeper against whom they were charged in the financial control record.
*574 OPINION
1. That Lt. Conadr. Meredith falsified the March and April Commissary Store Balance Sheets by raising the inventory.
2. That Lt. Comdr. Meredith was guilty of culpable inefficiency in the performance of his duties as Officer in Charge of the Commissary Store.
3. That the officer in charge failed to fix definite responsibility on those in charge of the bulk storeroom, excess material, sales room, and the butcher shop.
4. That Chief Pay Clerk Turnbow gave improper but unconsidered advice to the office storekeeper in the preparation of the February returns.
In carrying out the excess material program, he was negligent in that he did not consider whether or not the resulting paper work and material could be handled by the store personnel.
After having been placed in charge of excess material, he failed to personally check the material into the store.
Chief Pay Clerk Turnbow had insufficient naval background to properly perform his duties as assistant to the officer in charge.
5. That Emilio Gianni, storekeeper first class, had knowledge of the fact that the March and April Commissary Store Balance Sheets were falsified.
He used poor judgment in the preparation of the February returns by not going further than the assistant to the officer in charge for advice, since the Chief Pay Clerk had not been working with office records.
6. It is the opinion of this board that it cannot definitely be determined how or when the loss of approximately $21,022.34 occurred, due to looseness of the entire organization, including records.
It is possible that this loss could have been incurred by any one or combination of the following, which may have extended over an indefinite period:
(a) Errors in selling price set below cost.
(b) Partially by pilfering by customers.
(c) Inefficiency and possible dishonesty by cash register operators and meat counter employees.
(d) Possible fraudulent arrangement between personnel of store and dealers to receipt for material not delivered.
(e) Theft by personnel of the store.
*575 RECOMMENDATIONS
1. That Lt. Comdr. Boyd B. Meredith, Supply Corps, (S), U. S. Naval Reserve, be tried by general court-martial on the following charges:
(a) Scandalous conduct tending to the destruction of good morals (falsifying his accounts).
(b) Culpable inefficiency in the performance of duty.
2. That Chief Pay Clerk Jack Edward Turnbow, (S), TJ. S. Naval Reserve, be given a letter of reprimand for inefficiency in the performance of his duties as assistant to the officer in charge.
3. That Emilio Gianni, storekeeper first class, TJ. S. Navy, be privately reprimanded by the Commanding Officer, Enlisted Personnel, Mare Island Naval Shipyard, for failing to report falsification of the March and April returns, and for using poor judgment in the preparation of the February returns.
12. On May 22, 1946, the plaintiff was relieved of duty as Officer-in-Charge of the Commissary Store and placed on temporary duty at the naval station.
13. On September 11,1946, Charges and Specifications for a general court-martial proceeding against the plaintiff were issued by the Commandant, 12th Naval District. Those later found to be proved were as follows:
CHARGE X — SCANDALOUS CONDUCT TENDING TO THE DESTRUCTION OE GOOD MORALS
Specification 1. In that Boyd B. Meredith, Lieutenant, Supply Corps, TJ. S. Naval Reserve, while serving as a lieutenant commander on active duty at the Mare Island Naval Shipyard, Vallejo, California, and while on duty as officer-in-charge of the TJ. S. Naval Commissary Store at said shipyard, did, on or about 31 March 1946, knowingly present and cause to be presented to the Bureau of Supplies and Accounts, TJ. S. Navy Department, a commissary store balance sheet designated as “Nav. S. and A. Form 142,” covering the period from 1 March 1946 to 31 March 1946, and certified as true by said Meredith, to the effect that on that date, to wit, 31 March 1946, the amount of the balance on hand of stock intended for sale and in the possession of the said commissary store was one hundred fourteen thousand eight hundred twenty-one dollars and seventy-four cents ($114,821.74); whereas, in truth and in fact, on 31 March *576 1946 the amount pf.tb,e balance, on hand of stock intended for sale and in possession of the' said commissary store was about ten,thousand.dollars-. ($10,000) less than the amount of the balance on.hand presented as aforesaid; as he, the said Meredith, then and there well knew; which said certified balance sheet was false, and as such, made and presented by the said Meredith, to the said Bureau knowingly and willfully and with intent to deceive.
SpecificatioN- 2. In that Boyd B. Meredith, lieutenant Supply Corps, U. S. Naval Eeserve, while serving as a lieutenant commander on active duty at the Mare Island Naval Shipyard, Vallejo, California, and while on duty as officer-in-charge .of the U. S. Naval Commissary Store at said shipyard, did, on or about 30 April 1946, knowingly present and cause to be presented to the Bureau of Supplies and Accounts, U. 3. Navy Department, a commissary .store balance sheet designated as “Nav. S. and A. Form 142,” covering the period from 1 April 1946 to 30 April 1946, and certified as true by the said Meredith, to the effect that on that date, to wit, 30 April 1946, the amount of the balance sheet on hand of stock intended for sale and in .possession of said commissary store was ninety-six thousand three hundred twenty-five.dollars and seventy-five cents ($96,325.75); whereas, in truth and in fact, on 30 April 1946 the amount of the balance on hand of stock intended for sale and in the possession of said commissary store was about ten thousand dollars ($10,000) less than the amount of the balance on hand presented as aforesaid, as he, the said Meredith, then and there well knew; which said certified balance sheet was false, and as such, made and presented by the said Meredith to the said Bureau knowingly and wilfully and with intent to deceive.
CHARGE H — CULPABLE INEFFICIENCY IN THE PERFORMANCE OF DUTY
Specification 3. In that Boyd B. Meredith, lieutenant, Supply Corps, U. S. Naval Eeserve, while serving as a lieutenant commander on active, duty at the Ma,re Island Naval Shipyard, Vallejo, California, and while on duty as officer-in-charge of the U. S. Naval Commissary. Store at said shipyard, having the responsibility and duties of the officer-in-charge at said commissary store, did, from about 1 February 1946 to about 1 May 1946, at said commissary store, fail personally to keep a voucher control record indicating a running record by total amounts of all requisitions submitted and of all *577 receipt and expenditure vouchers accomplished for stock received and sold by the said commissary store, as it was his duty to do.
14. On September 24,1946, the general court-martial, before which the plaintiff was tried, rendered its decision and found the plaintiff not guilty of Charge III, Neglect of Duty (four specifications) and acquitted him thereof. He was found guilty of the charges and specifications set forth in finding 13 above, and the following sentence was adjudged:
The court, therefore, sentences him, Boyd B. Meredith, lieutenant, Supply Corps, U. S. Naval Reserve, to be dismissed from the United States naval service and to lose pay amounting to five hundred dollars ($500.00).
On October 29,1946, the proceeding, findings, and sentence of the general court-martial were approved by the convening authority, the Commandant of the 12th Naval District.
15. On April 1, 1947, the plaintiff submitted his resignation from the United States Naval Reserve to the Secretary of the Navy. By letter dated April 24, 1947, the Acting Secretary of the Navy advised the plaintiff that his resignation was accepted and that he would be released from active duty, the separation considered to be under honorable conditions. The letter was routed to the plaintiff via the Commandant, 12th Naval District, and stated in part as follows:
Your commanding officer is directed to withhold delivery of these orders until assured' by the disbursing officer carrying your ácGo'unts that your final pay, or a substantial portion thereof, will be ready for delivery to you, your next of kin, or your legal representative, as appropriate, on the effective date of your release from active duty.
16. Under date of May 2,1947, the Secretary of the Navy advised the plaintiff that the sentence of the general court-martial was remitted, and that the plaintiff’s resignation had been accepted under honorable conditions, but without a certificate of satisfactory service.
The plaintiff was released from active duty on July 21, 1947. His entire active service had been at the Mare Island Commissary Store and Naval Shipyard.
17. After the plaintiff wa,s relieved as Officer-in-Charge of the Commissary Store, and up to his release from active *578 duty on July 21, 1947, his pay was withheld in the sum of $4,039.43, none of which has ever been paid, although the plaintiff made demand therefor at the time of his release from duty.
18. On January 14,1947, the Bureau of Supplies and Accounts, Navy Department, raised a charge against plaintiff with the General Accounting Office, as follows:
In accordance with the authority of the Act of 29 March 1894 (28 Stat. 47) as amended by the Act of 21 June 1921 (42 Stat. 24) (31 TJ. S. C. 89, 90), I hereby certify that in the audit of the Commissary Stores Account of the Mare Island Naval Shipyard, Vallejo, California, rendered by Lieutenant Commander Boyd B. Meredith, SC, USNR, symbol number 59-955, for the period 1 May 1946 to 18 May 1946, the amount of $21,022.34 reported in the account as a loss was dis-allowedthat a Board of Investigation was convened at the direction of the Commander, Mare Island Naval Shipyard, for the purpose of inquiring into and reporting upon alleged irregularities in the accounts of the Naval Commissary Store, Mare Island Naval Shipyard; that the Board of Investigation found that the Commissary Store Balance Sheet submitted over the signature of Lieutenant Commander B. B. Meredith for the months of March and April 1946 were falsified and it was the Board’s opinion that they were falsified by Lieutenant Commander Meredith; that Lieutenant Commander Meredith was guilty of culpable inefficiency in the performance of his duties as Officer in Charge of the Commissary Store; that the said amount of $21,022.34 includes all charges made up to this audit and not previously certified; that Lieutenant Commander Boyd B. Meredith, SC, USNR, has had a reasonable opportunity to make a satisfactory explanation regarding the loss of $21,022.34 and that he has not been relieved of responsibility.
It is requested that the sum of $21,022.34 be recorded as a charge against the account of Lieutenant Commander Boyd B. Meredith, SC, USNR, symbol number 59-955 and collection be effected under his bond, and any funds now due or subsequently becoming due the said Lieutenant Commander Boyd B. Meredith, SC, USNR, be withheld from payment and deposited in the Treasury of the United States to the credit of the appropriation “Naval Stock Fund” until recovery in full has been made to the United States of the sum of $21,022.34.
*579 19. The General Accounting Office by Certificate of Settlement of Account No. H-295711-N, dated August 25,1948, certified that there was due the United States from the plaintiff the sum of $21,022.34, representing a shortage in the plaintiff’s accounts as a disbursing officer, as reported by the Navy Bureau of Supplies and Accounts.
By letter dated October 5,1948, the plaintiff was requested by the General Accounting Office to deposit that sum of money into the Treasury within 30 days.
At the trial of this case on November 14, 1952, the plaintiff’s attorney advised that the United States had just commenced an action against the plaintiff and his bonding company in the United States District Court at San Francisco* California, to recover the sum of approximately $21,000.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States four thousand thirty-nine dollars and forty-three cents ($4,039.43).