**UNITED STATES of America,
Plaintiff,**

v.

**Lester M. KOELSCH, 4828 West Scranton Place, Milwaukee, Wisconsin,
Defendant.**

**Civ. A. 6462.**

United States District Court
E. D. Wisconsin.

July 3, 1956.

Edward G. Minor, U. S. Atty., and Arnold W. F. Langner, Jr., Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

William R. Gold, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action brought to recover damages because of the loss of a certain Three-quarter Ton Dodge Weapon Carrier of the Government.

In April 1945, defendant was an officer in the United States Air Force stationed at St. Andre', France. The Village of St. Andre' was part of an Air Force Installation or Base. Military Police were stationed at the exits of the Base. No government vehicle was permitted to leave the post, assuming the rules were lived up to, without having a "trip ticket" showing the authorization for leaving the post with the vehicle.

Defendant received word that his father had died. He cabled to the United States through the Red Cross to get certain information. On or about the 5th day of April 1945, defendant obtained permission from the Officer of the Day to use this Dodge vehicle to go to the Red Cross Headquarters which was on the post to inquire with reference as to a reply to his cable. Accompanied by Flight Officer Beaty, Beaty driving, he went to the Red Cross Headquarters and parked the vehicle in front of the Red Cross Club. The vehicle had no ignition lock. There was at least one Military Policeman on duty within five feet of where the vehicle was parked. There is a dispute in the evidence and it may well have been that more than one Military Policeman was on duty at that point at that time. The Military Policemen saluted, and defendant and Beaty went into the Red Cross Club. They were gone about five minutes and when they emerged, the vehicle was gone. Defendant immediately notified the authorities but no trace was ever found of the vehicle. The Military Police were still there when defendant and Flight Officer Beaty emerged from the Red Cross Club but they did not know what had happened to the vehicle.

Defendant was discharged from the Service in December 1945. At that time no claim was made against him for the loss of the vehicle. He received his regular termination pay. In November 1954, practically nine years later, plaintiff brings this action. In the complaint it is alleged that the defendant was negligent in parking the vehicle unlocked and unattended, contrary to applicable regulations; that the negligence of the defendant was the proximate cause of the loss of the vehicle; that plaintiff has been damaged in the sum of $1,464.95 because of the loss of the vehicle.

Excepting for Exhibit 1, there is no evidence in the record as to what the regulations were. No one has offered any proof of the law in France as to negligence covering this type of a situation, nor has any evidence or information been offered as to what law governs other than Exhibit 1.

■ Taking the usual test for negligence, namely, failure to exercise that degree of care which the great mass of mankind or the ordinarily prudent man would exercise under the same or similar circumstances, the Court finds as a fact that the defendant was not guilty of any

negligence. It would seem unreasonable to require the defendant to anticipate that this vehicle which he could not lock, because locks were not provided, would be stolen in the immediate presence and within five feet of one or more Military Policemen who were on duty. It is expecting too much, in the opinion of the Court, to ask the defendant to anticipate that this vehicle could be taken off the post, past Military Police without a "trip ticket" or proper authority. The Court does not believe that in the exercise of ordinary care the defendant would be required to anticipate that the Air Force could not find that vehicle on its own post or installation if it remained there and did not go past the Military Police. For these reasons and considering the entire circumstances, it is the opinion of the Court that the defendant did not fail to exercise that degree of care and foresight which an ordinarily prudent man would exercise under the same or similar circumstances.

The question then remains as to whether the defendant violated any applicable Air Force or Army regulations and, assuming that that question is answered in the affirmative, does such violation create civil liability on the part of the defendant?

As to the first question: A copy of the regulations filed is entitled "Change" of previous regulations which were not offered. The portion relied on by the government is as follows:

"2. * * * 'US Army vehicles may be left unattended only under one or more of these conditions:

'a. Sedans, when the doors are locked.

'b. When under the immediate surveillance of guards, or military or civilian police.

'c. During the time actually required by the driver to report arrival.

'd. When immobilized by locking of the steering wheel (by means of padlock and chain) or the transmission shift lever.' "

As to "a" in the above regulation, there is no evidence that the vehicle was provided with any kind of locks or that the doors, if there were doors, could have been locked. Paragraph "b" permits leaving the vehicle when under the immediate surveillance of military police. The Court believes that when the vehicle is parked within five feet of military police on duty, when the military police recognized the officers leaving the vehicle and saluted and saw them go into the Red Cross Club, the vehicle was actually under the immediate surveillance of military police so that "b" was not violated. Paragraph "c" is not applicable and there is no evidence in the record to indicate that means were provided for locking the steering wheel or a transmission shift lever by means of a padlock or otherwise. For the foregoing reasons, it is the opinion of the Court that this regulation was not, in fact, violated.

Plaintiff relies on United States v. Du Perow, D.C., 208 F. 895 to the effect that Exhibit 2, the Accounting Office debit against the defendant, has the effect of establishing a prima facie case against him in a suit by the government for the value of the property. However, the defendant is permitted to rebut such a prima facie case by competent evidence. This, the Court believes, the defendant has done.

No authority was cited for the proposition that assuming the regulation was, in fact, violated (and the Court does not find that it was violated), civil liability is created. In the absence of authority to the contrary, it would be the Court's view that the violation of the regulation does not necessarily establish civil liability. Army regulations, such as this, are principally for disciplinary purposes. Violation properly subjects the violator to such disciplinary measures as the proper Army authorities may believe should be imposed under the circumstances.

Defendant's counsel is directed to prepare proposed Findings of Fact and Conclusions of Law and Judgment in ac-

cordance with this decision and to submit said proposals to counsel for the plaintiff for approval as to form only.